CHARLES E. ADCOX v. MRS. JAMES H. AUSTIN
and
J. C. McINTYRE, TRADING AS TEXTILE MOTOR FREIGHT, v. MRS. JAMES H. AUSTIN.

(Filed 21 May, 1952.)

**1. Automobiles § 18g (2): Evidence § 42b—**

Testimony of spectator that, at the time of the accident, she exclaimed "that car hit the truck" *held* competent.

**2. Automobiles § 18g (4)—**

Testimony of a witness that she noticed defendant's car "was being driven fast" *held* competent to explain her previous testimony that she had given it more than usual attention, and certainly was not prejudicial in view of her subsequent testimony estimating its speed.

**3. Automobiles § 18g (5)—**

The physical facts at the scene of a collision are competent upon the question as to the speed of the vehicle at the moment of impact.

**4. Automobiles § 12a—**

G.S. 20-141 requires the driver of a car, in the exercise of the duty to use due care, to reduce his speed to less than the maximum permitted by the statute when special hazards exist with respect to traffic or weather conditions or when necessary to avoid colliding with any person or vehicle.

**5. Automobiles § 8a—**

The driver of a vehicle is under duty to maintain a proper lookout and to see that which he ought to see.

**6. Trial § 19—**

Upon motion to nonsuit, the trial court is limited to ascertaining whether there is any evidence of probative value sufficient to take the issue to the jury.

**7. Automobiles § 18h (3)—**

Evidence tending to show that defendant was driving a car fifty-five miles per hour in approaching a Y-shaped intersection on a rainy day, that a tractor-trailer had jack-knifed, skidded and come to rest on the concrete apron between the intersecting highways immediately before defendant's car reached the scene, and that defendant's car hit the right rear wheel of the tractor with such force as to spin it around and completely demolish her car, *is held* to justify the submission of the issue of contributory negligence to the jury.

**8. Negligence § 21—**

A finding by the jury that plaintiff was not injured by the negligence of defendant, that defendant was injured by the negligence of plaintiff, but that defendant by her own negligence contributed to her injury, *is held* not inconsistent when measured by the applicable principles of law in this case.

APPEAL by defendant from *Patton, Special Judge,* and a jury, July Civil Term, 1951, SCOTLAND.

Civil actions to recover for personal injury and property damage sustained in the collision between the automobile of defendant and the tractor-trailer owned by J. C. McIntyre, trading as Textile Motor Freight, and driven by plaintiff, Charles E. Adcox.

The plaintiff in each suit alleged negligence on the part of the defendant. The defendant denied the material allegations of the complaint and filed cross-actions, alleging negligence on the part of both plaintiffs. For convenience and by consent the cases were consolidated for trial. This appeal relates to and arises from the verdict and judgment upon the cross-actions of defendant.

The plaintiffs' evidence tends to show these facts: The collision occurred on 16 August, 1949, at about 4:30 p.m., between Monroe and Wadesboro at the Y-shaped intersection formed by old U. S. Highway 74 and the new highway bearing the same number. From the junction of these two highways a concrete apron extended 352 feet in an easterly direction. The collision occurred on the surface of this concrete apron. The tractor-trailer combination was traveling in an easterly direction from Monroe following the automobile of Mrs. T. C. Watson. The weather condition was rainy and the road wet. The tractor-trailer had been following the Watson car at a reasonable distance for a mile or more, both vehicles traveling at approximately 35 miles per hour. The tractor-trailer made no effort to pass the Watson car. Upon reaching the intersection, the Watson car slowed down for the driver to ascertain from the road signs the direction she wished to take. The slowing down of the Watson car gave rise to the application of brakes' on the tractor-trailer, which was then at the western end of the intersection. Immediately the tractor-trailer jack-knifed and began to skid across the intersection for a distance of 50 to 60 feet, marking a gradual curve or straight line without zig-zagging and came to a full stop on the concrete apron in the jack-knifed position a second or two before the collision. Both tractor and trailer were off the area of that portion of Highway 74 upon which the appellant was traveling. The defendant was traveling in a westerly direction on Highway 74. As she met and passed the Watson automobile, she attracted the attention of Mrs. Watson because she was driving fast. She was at that time and at the time she approached the point of collision traveling at a speed of 55 miles an hour or more. As the Austin car passed, Mrs. Watson looked in her rear view mirror and said to her husband, "That car hit the truck." The front of the Austin car collided with the right rear wheel of the tractor and spun the tractor around on its "5th" wheel. The Austin car pivoted around and stopped facing the tractor. The Austin car was completely demolished. Mrs. Austin's

mother and another passenger were killed in the collision. A young son was injured, but not seriously. The car collided with the tractor with sufficient force to knock the driver of the tractor unconscious and to produce a severe dislocation of the fourth vertebra of his spine.

On the other hand, the defendant's evidence tends to show these facts: Mrs. Austin had been driving an automobile approximately 25 years and was acquainted with U. S. Highway 74 from Lumberton to Charlotte, having traveled that highway at intervals from the time she was a student at Queens College up to the time of the collision. Mrs. Austin remembered the trip on the afternoon of 16 August, 1949, and that she never exceeded the speed limit. From Lumberton to Laurinburg it was not raining, so she traveled that distance at a speed of 40 to 45 miles per hour. After passing Laurinburg, she encountered a drizzle of rain and slowed her speed accordingly. She drove definitely on the right side of the road. She stated that it was hard to tell when she first saw or had any notice of the tractor-trailer, which collided with her car, because it was such a sudden thing and she was traveling at a moderate rate of speed because of the rain and because she had just passed over Browns Creek which was flooded. Her mother was very nervous and she was unusually careful not to frighten her in any way and for that reason and the fact that she was coming to the cross-roads on the east side of Polkton, she traveled very moderately. She slowed down even more because she knew country roads and that quite often traffic comes on through intersections. The first thing she remembers about the tractor-trailer was that a huge careening object appeared immediately in front of her and she jerked her steering wheel as hard and far to the right as she could. She did not remember anything after that. Mrs. Austin, as a witness for herself, in addition to her account of the facts leading up to and involved in the wreck itself, gave a detailed account of her own serious, painful and permanent injuries, which included a crushed pelvis, broken hip, broken arm and leg, broken jawbone, and multiple other injuries, and described the death of her mother and friend as a result of the collision. She recounted the excruciating physical and mental pain suffered by her even after narcotics had been administered.

At the conclusion of the plaintiffs' evidence, defendant moved for judgment as of nonsuit in both actions, which motion was denied and defendant excepted. At the close of the defendant's evidence, defendant renewed her motion for judgment as of nonsuit. This was again denied and defendant excepted.

It was stipulated that the issues submitted were in proper form. Defendant by proper exception challenged the submission of the first, second and third issues on the ground that there was lack of evidence to support these issues. However, no objection was made to the submission of the

issue of contributory negligence. The following issues were submitted to the jury: 1. Was the plaintiff J. C. McIntyre and the plaintiff Charles E. Adcox injured and damaged by the negligence of the defendant, Mrs. James H. Austin, as alleged in the complaint? 2. What amount, if any, is the plaintiff J. C. McIntyre entitled to recover for damage to his property? 3. What amount, if any, is the plaintiff Charles E. Adcox entitled to recover for his injuries? 4. Was the defendant, Mrs. James H. Austin, injured and her property damaged by the negligence of the plaintiffs, as alleged in the cross-actions? 5. Did the defendant, Mrs. James H. Austin, by her own negligence contribute to her injury and damage as alleged in the replies? 6. What amount, if any, is the defendant, Mrs. James H. Austin, entitled to recover of the plaintiffs?

Sometime after the jury retired for deliberation, it returned with the issues and propounded this question to the court: "If we answer number 1 and number 4 and number 5 yes, can that be right?" The court redelivered substantially the instructions previously given on the issues inquired about. The foreman then made this inquiry of the court: "Can we convict both sides of contributory negligence?" The trial judge then explained to the jury that they were not deciding a criminal case but a civil action and redefined their duties under the law with respect to the issues and the law applicable to each. The court concluded with this question: "Does that clarify what you are talking about?" To which the foreman replied: "Yes, and I thank you."

After further deliberation, the jury again came out with this question: "If we answer number 1 no, number 4 yes, and number 5 yes, is that complete and proper?" The judge again instructed the jury that it was its duty to answer the questions under the evidence and under the rule of law laid down by the court and that if the jury found the facts to be such under the evidence and the charge of the court, they had a right to answer the first issue no, the fourth issue yes, and the fifth issue yes, and that upon such a verdict, neither party could recover. To this the foreman replied: "That is our wish." The jury again retired and brought in their verdict, answering the first issue no, the fourth issue yes, and the fifth issue yes, with no answer to the other issues.

The defendant moved to set aside the verdict on the fifth issue and suggested that the jury be polled. Whereupon, the presiding judge requested each juror to stand, repeated the answer appearing on the verdict, and asked each juror: "Is that your verdict?", to which each answered: "Yes." Then the court put this additional question to each juror: "You still assent thereto?", to which each answered in the affirmative. The defendant then moved to set the verdict aside as to the fifth issue and as to the entire verdict as being against the greater weight of the evidence and for that there is no evidence to support the fifth issue. This motion

was denied and defendant excepted. Defendant then moved to set aside the verdict as being against the greater weight of the evidence. This motion was also denied and defendant excepted.

From the judgment upon the verdict the defendant excepted and appealed, assigning errors.

*James W. Mason and Smathers & Carpenter for plaintiffs, appellees.*
*McKinnon & McKinnon, Banks D. Thomas, and Varser, McIntyre & Henry for defendant, appellant.*

VALENTINE, J. This record reveals one of life's dark tragedies, in which the defendant's mother and friend were killed, her small son badly hurt and the defendant herself severely, painfully and permanently injured. The personal narrative of these events by the defendant must have made a tremendous emotional appeal to the presiding judge and the jury. However, these, as all other matters involved in litigation, must be stripped of all pathos and pity and decided upon the merits of the matter under the rules of law developed for the administration of justice. With this end in view, we have examined carefully the exceptions entered by the appellant and brought forward in her brief, and in them we find no reversible error to justify the awarding of a new trial.

In the testimony of Mrs. Watson she spoke of looking in her rear-view mirror shortly after the defendant passed then exclaiming to her husband, "That car hit the truck." This was a spontaneous exclamation and competent under the rule laid down in *S. v. Smith,* 225 N.C. 78, 33 S.E. 2d 472, and cases there cited. When asked if there was anything about the car that attracted her attention, she replied, "I noticed she was driving fast." Exception to this question and answer is without merit. The witness had testified that she watched the automobile even after it passed. It was competent for her to explain why she gave it more attention than usual. Furthermore she immediately gave her estimate of the speed as 55 miles per hour, to which there was no objection.

A large part of appellant's well-prepared brief is devoted to a forensic discussion of the evidence directed toward the negligence of the plaintiffs, the injuries and suffering of the defendant, and the damages involved in the collision, all of which is immaterial in view of the jury's findings that the plaintiffs were negligent and that the defendant was guilty of contributory negligence.

Nowhere are we referred to an authority in her brief, nor has our investigation disclosed any precedent, which was violated by the charge of the court. The only real question for determination upon this record is whether there was evidence worthy to be submitted to the jury upon

the question of the defendant's contributory negligence. We think that a jury question arose upon the evidence.

The evidence revealed that the road was wet and slick with rain still falling. The headlights were burning on the tractor-trailer. The tractor-trailer, traveling at 35 miles an hour, was jack-knifed by the application of brakes when the car in front of it slowed down at intersecting highways. The evidence also tended to show that the defendant was operating her automobile on a wet road under atmospheric conditions which made fast driving dangerous and that she failed to keep a proper lookout. The impact and destructive results of the collision itself could properly be regarded as tending to indicate excessive speed. "There are a few physical facts which speak louder than some of the witnesses." *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88; *Yokeley v. Kearns,* 223 N.C. 196, 25 S.E. 2d 602.

There was evidence that the defendant's car struck the right rear tractor wheel with sufficient force to spin or shunt the tractor-trailer around, and almost demolish the Austin car. The force with which defendant's car struck the tractor and the attendant destruction, injury and death was appropriate evidence to be considered by the jury upon the question of contributory negligence of the defendant. *Baker v. R. R.,* 205 N.C. 329, 171 S.E. 342; *Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555; *Herman v. R. R.,* 197 N.C. 718, 150 S.E. 361.

G.S. 20-141 lays down this statutory principle: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." The fact that the speed of a vehicle is less than the maximum allowed by law for such vehicle "shall not relieve the driver from the duty to decrease speed . . . when traveling upon any narrow . . . roadway, or when special hazard exists with respect to . . . other traffic, or by reason of weather or highway conditions"; and the statute further directs that "speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on . . . the highway in compliance with legal requirements and the duty of all persons to use due care." *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593.

It is the duty of every driver of a motor vehicle to keep and maintain a proper lookout in the direction of travel and upon such driver is imposed the responsibility and duty of seeing that which he ought to have seen. *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330. Under our system of jurisprudence the taking of a case or a proper issue from the jury, while under proper circumstances is sometimes unavoidable, is always a delicate task and involves more than a strong feeling that a party should not recover. "The power of the court is limited to the ascertainment whether there is any evidence at all which has probative value in any or

all of the facts and circumstances offered in the guise of proof. . . . It is a matter of dropping the proffered proof into evenly poised balances to see whether it weighs against nothing. *Cox v. R. R.,* 123 N.C. 604, 31 S.E. 848, and cited cases. The result often brings a consequence not to be desired, sometimes not even consonant with our sense of justice, but when it is shocking to the conscience, the judges of the Superior Court have a remedy with which we are not entrusted." *Wall v. Bain, supra.*

Whether the outlook of the defendant satisfied the demands of prudence, or whether it was too casual or not sufficiently sustained, or whether the defendant's speed was excessive, are matters addressed to the jury under all the facts and circumstances disclosed by the evidence, and it was for the jury to say whether the defendant was guilty of contributory negligence. It appears that the case was well tried by the able judge who presided and that the jury was deeply concerned about the case and anxious to render a correct verdict upon the evidence. The poll of the jury revealed not only that it had answered the issues as shown by the verdict, but each juror in his own right still assented to the verdict in open court and in the presence of the defendant, whose facial disfiguration and other physical deformities still made an appeal to the sympathies of the jury. The verdict was not inconsistent when measured by the applicable principles of law. *Edwards v. Motor Co., ante,* 269.

The jury has spoken and we have no right upon this record to disturb the verdict.