FRED B. SINGLETARY, JR., v. MARCADE NIXON, ISHAM G. NIXON AND
WILLIAM E. NIXON, Co-PARTNERS DOING BUSINESS AS NIXON
BROTHERS.

(Filed 17 March, 1954.)

**1. Trial § 22a—**

Motion to nonsuit at the close of all the evidence must be determined
upon a consideration of all the evidence taken in the light most favorable
to plaintiff and giving him the benefit of every reasonable inference to be
drawn therefrom.   G.S. 1-183.

**2. Trial § 22b—**

On plaintiff's motion for involuntary nonsuit, so much of defendant's
evidence as is favorable to plaintiff, or tends to explain or make clear that
which has been offered by the plaintiff, may be considered, but defendant's
evidence which tends to establish another and a different state of facts
or which tends to contradict or impeach the evidence offered by plaintiff
is to be disregarded.

**3. Negligence § 19c—**

Motion for involuntary nonsuit on the ground of contributory negligence
will not be sustained or directed unless the evidence is so clear on that
issue that no other logical inference can reasonably be drawn from the
evidence considered in the light most favorable to plaintiff.

**4. Automobiles § 8a—**

A motorist must at all times operate his vehicle with due regard to the
width, traffic and condition of the highway, keep his car under control and
decrease speed when special hazards exist by reason of weather or high-
way conditions so as to avoid colliding with any other vehicle.   G.S. 20-141.

**5. Same—**

The operator of a vehicle at nighttime must take notice of the existing
darkness and not exceed a speed at which he can stop within the radius
of his headlights, having due regard to the then existing weather condi-
tions, and must keep a lookout in the direction of travel.

**6. Automobiles §§ 8d, 18h (3)—Evidence held to show contributory negligence on part of driver colliding with trailer blocking lane of travel.**

The evidence tended to show that a tractor-trailer loaded with cotton was being backed from the highway into its terminal, and that the trailer was at about a 45-degree angle across the northbound traffic lane, so that neither the rear lights nor the front lights were visible to plaintiff who was traveling north, that plaintiff's brakes were in good condition and his lights burning and focused as required by law, G.S. 20-131, that plaintiff did not see the obstruction which "looked like a cloud," until plaintiff was close, and that by reflex action he applied his brakes, veered to the right and collided with the truck almost at the same time. There was no evidence that the trailer was suddenly backed across plaintiff's lane of traffic at a time when he was too close to stop and avoid the collision. *Held:* The plaintiff's testimony compels the conclusion either that he was operating his vehicle at excessive speed or was not keeping a proper lookout at the time, which constituted contributory negligence barring recovery as a matter of law.

ERVIN and PARKER, JJ., dissent.

APPEAL by plaintiff from *Paul, Special J.,* September Term, 1953, NASH. Affirmed.

Civil action to recover compensation for personal injuries resulting from an automobile-tractor-trailer collision.

Defendants, who are engaged in the trucking business, own a terminal on the east side of Highway 301 within Smithfield. About 8:15 p.m., 16 September 1949, their employees arrived at the terminal with a tractor and a platform trailer loaded with fifty bales of cotton. They had begun to back the trailer in to the terminal to unload the cotton. When the trailer was across the east, or northbound, lane of traffic with its rear wheels off the pavement and on the east shoulder of the highway, and the tractor was in, or partly in, the southbound lane, plaintiff approached from the south, traveling on his proper side of the road, and ran into the trailer just behind the rear wheels of the tractor where the trailer is attached to the tractor. The front part of his automobile went under the trailer, and he received serious personal injuries.

The trailer was located at about a 45-degree angle across plaintiff's lane of traffic with the rear end pointing in a southeasterly direction so that its rear lights were not in his lane of traffic and not readily visible to him. The exact position of the tractor and the direction in which it was headed is not clearly disclosed by the record. The evidence does disclose that it was not in position for its headlights to give plaintiff warning a vehicle was in his lane of traffic. Plaintiff makes no contention he was blinded by its lights. He said he did not observe them.

The plaintiff testified that upon entering Smithfield he reduced his speed to 35 m.p.h.; that before he reached the tractor he met an auto-

mobile going south and dimmed his lights but had again switched on his bright lights; that his lights were in proper working order and that he could have observed any normal object in the road within a distance of two hundred feet, or a man walking, or a car driving toward him, but not the gray object, the same color as the road.

He described the actual collision in the following language:

"I didn't know what stopped my car at the moment of the collision but afterward when I come to the ambulance helpers were taking me out of the car and then I knew what stopped it, a truck and trailer loaded with cotton . . . I didn't see the tractor or truck when it came into the highway, didn't know it was in front of me, didn't know how long it had been there and didn't know why it was there. I was close to the truck loaded with cotton before I saw what it actually was, but I don't know how close because I don't know the exact number of feet. All I can say truthfully is this: I saw a cloud or something like a blur in the road. I put on my brakes and veered to the right and then the impact. I didn't see something that looked like a car. It was the appearance of something. It was not concise. You see, there were no visible lights . . . I saw the appearance of something which was not identifiable to me; more of a cloud; overcast. It was an obstruction. Upon seeing that, I put my brakes on, pulled my wheels to the right, and that is all I know. Reflex action caused me to put the brakes on. I put them on and turned to the right . . . Seeing the cloud caused the reflex action.

"I saw something and hit it and it turned out to be a truck. I didn't know it was a truck when I hit it. I don't know how far I was from the obstacle when I first saw it. When I first saw it I don't know how far away from it I was or how near, only I was close. The only statement I can make truthfully is I don't know the distance nor do I care to estimate it. All I know is this one thing: I was close, saw this cloud or obstruction, put my brake on and turned to the right. I have been asked the number of feet I was from the truck when I saw it. The only true and correct answer I can give is I was close. My lights were working. My brakes were in good working order . . . Those three things happened almost at the same time, applying brakes, turning wheel to the right and the collision, which I was not aware of until afterward.

"As I looked up the highway I didn't see any lights in the highway or pathway of the car. No lights visible. My lights were burning. I tell the jury I didn't see the object in sufficient time to enable me to stop the automobile before striking. If the tractor part of that equipment had headlights on it, and if the headlights were burning, I didn't see any lights visible whatsoever, if the lights on the tractor were going up the road in the opposite direction from me. I am saying in effect if the lights were burning on the tractor and trailer, I didn't see any of them. It was not

visible to me until just before the accident. All I saw was a blur, same color as the road. Evidently I didn't know what I hit until it was all over . . .

"The object in the road had the same appearance as the road. I had bright lights on . . . I estimated my speed at 35 miles an hour, but I am unwilling to estimate the distance in feet . . .

"I don't know what position the tractor and trailer were across Highway 301. It appeared to me like most of it was blocked. It was across the road . . .

"I couldn't say whether it was a red truck or a red trailer. If it was a red trailer, I did not see it, and if it was a green truck, I did not see it. I saw this dark spot that looked like a cloud."

At the conclusion of the testimony the court below, on motion of defendants, entered judgment as in case of involuntary nonsuit. Plaintiff excepted and appealed.

*John M. King and Thorp & Thorp for plaintiff appellant.*
*E. J. Wellons and Cooley & May for defendant appellees.*

BARNHILL, C. J.   When a motion to dismiss an action as in case of involuntary nonsuit comes on to be heard at the conclusion of all the evidence, as here, the question should be decided upon a consideration of all the evidence. G.S. 1-183; *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209.

This rule, however, is subject to certain limitations: (a) the evidence is to be taken in the light most favorable to the plaintiff and he is entitled to the benefit of every reasonable inference to be drawn therefrom; (b) so much of the defendant's evidence as is favorable to the plaintiff or tends to explain or make clear that which has been offered by the plaintiff, may be considered; but (c) that which tends to establish another and a different state of facts or which tends to contradict or impeach the evidence offered by plaintiff is to be disregarded. Otherwise consideration would not be in the light most favorable to the plaintiff. *Atkins v. Transportation Co., supra,* and cases cited.

Considering the evidence contained in this record, it may be that, *non constat* these limitations, some of the testimony offered by defendants might well be considered on their motion for judgment of nonsuit entered at the conclusion of all the testimony. The defendants offered evidence tending to show the location and color of the tractor and trailer—the tractor was green and the trailer was red. This was not denied by plaintiff other than in his statement that the vehicle appeared to him to be the same color as the road. They likewise offered evidence tending to show that one of their employees was on the south side of the truck directing

traffic and that when plaintiff approached he waved his light at plaintiff until he had to jump out of the road to keep from being run over; and that the truck was not moving at the time of the wreck.

Be that as it may, we need not—and do not—consider this testimony for the reason, in part, plaintiff's own description of the unfortunate mishap discloses that he was guilty of contributory negligence as a matter of law. This required a dismissal of the action.

It is established law in this jurisdiction that a judgment of involuntary nonsuit on the grounds of contributory negligence will not be sustained or directed unless the evidence is so clear on that issue that no other conclusion seems to be permissible. *Atkins v. Transportation Co., supra,* and cases cited; *Samuels v. Bowers,* 232 N.C. 149, 59 S.E. 2d 787; *Levy v. Aluminum Co.,* 232 N.C. 158, 59 S.E. 2d 632; *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762; *Mikeal v. Pendleton,* 237 N.C. 690, 75 S.E. 2d 756.

In this connection it may be said that it is presumed reasonable men draw reasonable conclusions, so that the inferences contemplated are logical inferences reasonably sustained by the evidence when considered in the light most favorable to the plaintiff. *Atkins v. Transportation Co., supra.*

The hub of our motor vehicle traffic regulations is contained in G.S. 20-140, 141. Under the provisions of these sections a motorist must at all times operate his vehicle with due regard to the width, traffic, and condition of the highway, and he must decrease speed and keep his car under control "when special hazard exists . . . by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any . . . vehicle, or other conveyance on . . . the highway . . ." G.S. 20-141; *Brown v. Bus Lines,* 230 N.C. 493, 53 S.E. 2d 539; *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462; *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361.

And, specifically, he must (1) when he operates his vehicle during the nighttime, take notice of the existing darkness which limits visibility to the distance his headlights throw their rays and he must operate his motor vehicle in such manner and at such speed as will enable him to stop within the radius of his headlights (but see ch. 1145, S.L. 1953); (2) keep an outlook in the direction of travel and he is held to the duty of seeing what he should have seen; and (3) give due regard to the then existing weather conditions. *Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Brown v. Bus Lines, supra; Adcox v. Austin,* 235 N.C. 591, 70 S.E. 2d 837; *Adams v. Service Co.,* 237 N.C. 136, 74 S.E. 2d 332.

Here the plaintiff was operating his vehicle on a straight road. His headlights and brakes were in good condition. There was nothing to

obstruct his view, and the light of the vehicle he met south of the truck did not obstruct his view. Indeed, it is not disclosed how far he was from the truck at that time. He testified his lights were focused as required by law, and the law provides they must be such as to permit him to see a person a distance of at least two hundred feet ahead. G.S. 20-131. He did not see the obstruction in the road, which "looked like a cloud" to him, until he was "close" to it—how near in feet he repeatedly declined to estimate. He testified in one way or another more than once that he applied his brakes, veered to the right, and collided with the truck, which "three things" happened "almost at the same time." This testimony compels the conclusion that he was either operating his vehicle at an excessive rate of speed or was not keeping a proper outlook at the time. Of necessity, such conduct on his part was, as a matter of law, a contributing cause of the collision. *Presley v. Allen & Co.,* 234 N.C. 181, 66 S.E. 2d 789.

There is no testimony in the record tending to show that the trailer was suddenly backed across his lane of travel at a time when he was too close to stop and avoid the collision or to support the other plausible explanations advanced by plaintiff. They amount to nothing more than pure speculation.

The plaintiff may, perhaps, draw consolation from the fact this record tends to show that he is the type of man who "sweareth to his own hurt and changeth not." Psalms 15:4. In his examination and cross-examination he was afforded opportunities to modify his testimony to his own advantage. Yet he adhered strictly to his first statements in respect to the manner in which the collision occurred, his nearness to the truck when he first saw it, the time when he applied his brakes, and other circumstances which tended to prove his own want of due care. For this at least he is to be commended.

For the reasons stated the judgment entered in the court below is

Affirmed.

ERVIN and PARKER, JJ., dissent.