WILEY THOMAS WILLIAMSON AND MILDRED B. WILLIAMSON, AD-
MINISTRATORS OF THE ESTATE OF RONEY M. WILLIAMSON, v. MORRIS
WILSON RANDALL.

(Filed 19 March, 1958)

### 1. Automobiles § 17—

It is unlawful for the driver of a vehicle along a servient highway
to fail to stop and yield the right of way as required by stop signs duly
erected, but such failure is not contributory negligence *per se*, but is
only evidence upon the issue to be considered with other facts adduced
by the evidence. G.S. 20-158(a).

### 2. Same—

The operator of a vehicle along the dominant highway is under no
duty to anticipate that the operator of a vehicle along the servient
highway will fail to stop as required by statute, and in the absence of
anything which gives or should give him notice to the contrary, he is
entitled to assume and act upon the assumption, even to the last moment,
that the operator of the vehicle on the servient highway will stop be-
fore entering the intersection.

### 3. Same—

The driver of a vehicle along the dominant highway does not have
the absolute right of way in the sense that he is not bound to exercise
ordinary care in regard to vehicles traveling along the servient highway.

### 4. Automobiles § 39—

While physical facts at the scene of the accident may tend to indi-
cate excessive speed in proper instances, when plaintiffs rely upon the
physical facts and other evidence of a circumstantial nature, they must
establish attendant facts and circumstances which reasonably warrant
the legitimate inference of actionable negligence from the facts estab-
lished and not such as merely raise a conjecture or speculation.

### 5. Automobiles § 36—

Negligence is not presumed from the mere fact of injury.

### 6. Automobiles § 42g— Evidence held to disclose contributory negli-
gence as matter of law on part of motorist entering intersection
from servient highway.

The evidence disclosed that defendant was traveling along the domi-
nant highway and had knowledge that stop signs had been erected
before the intersection along the servient highway, that he saw the
car driven by plaintiffs' intestate, on his right, approaching the inter-
section, and that immediately upon seeing that car enter the inter-
section, he applied his brakes, skidded some 44 feet and struck intes-
tate's car with such force as to knock it against a tree in the southeast
corner of the intersection, throwing the securely fastened front seat of
the car out and throwing intestate some 13 feet to the right of his car,
and pushing defendant's car into intestate's car on its right up to its
windshield, etc. *Held:* Irrespective of any negligence on the part of
defendant, the evidence discloses that intestate could have seen defen-

dant's car approaching and that intestate drove directly into the inter-
section across its path, constituting contributory negligence barring re-
covery as a matter of law.

### 7. Automobiles § 45—

Where the evidence discloses that defendant, traveling along the dom-
inant highway, immediately put on his brakes upon seeing the car of
plaintiffs' intestate enter the intersection from the servient highway,
the evidence is insufficient to present the issue of last clear chance,
since it does not disclose that defendant, after he saw or by the exer-
cise of due care should have seen that intestate was not going to yield
the right of way, then had sufficient time to have avoided the collision.

APPEAL by plaintiffs from *Paul, J.,* January Term 1958 of WILSON.
Civil action to recover damages for an alleged wrongful death.

From a judgment of nonsuit entered at the close of plaintiffs' evi-
dence, plaintiffs appeal.

*Lucas, Rand & Rose, Naomi E. Morris and Gardner, Connor & Lee
for Plaintiffs, Appellants.*
*Thorp & Thorp and Broughton & Broughton for Defendant, Appellee.*

PARKER, J. The collision, in which plaintiffs' intestate, a man 61
years of age, was killed, occurred about 7:30 a.m. on 27 February 1957
within the intersection of Rock Ridge Road and of Bullock School
Road (also called the old Raleigh Road) at a place called Stott's
Crossroads. Rock Ridge Road is a hard-surfaced highway running
generally north and south: the width of the hard-surfaced part of this
highway north of the intersection is 19 feet, south of it 20 feet. Bul-
lock School Road is a hard-surfaced highway running generally north-
west and southeast: the width of the hard-surfaced part of this high-
way is 18 feet. There are Highway Stop Signs on Bullock School Road:
one on this road as it intersects Rock Ridge Road from the west, and
one on it as it intersects the same road on the east. The Stop Sign on
the southwesterly side of Bullock School Road facing eastbound traffic
is approximately 34 feet from the center of the intersection of these
highways.

Plaintiffs' intestate was driving a 1957 Plymouth automobile, prac-
tically new, in an easterly direction on Bullock School Road, and
was approaching the intersection at Stott's Crossroads at the time
the defendant driving a 1954 Plymouth automobile on Rock Ridge
Road in a southerly direction was approaching the same intersection.
Plaintiffs' intestate was alone, and so was the defendant. In the col-
lision plaintiffs' intestate was killed. The only living eyewitness to
the collision was the defendant.

Plaintiffs introduced in evidence a written statement made by the
defendant, the relevant part of which is: "I was en route to school
travelling south on a rural paved road known as the Rock Ridge Road.

I was alone. The weather was cloudy, road dry and visibility good. The road was of asphalt construction, open country district and speed limit 55 miles per hour. As I approached Stott's Crossroads of which old Raleigh Road intersects, I saw a vehicle to my right heading east. At this time I cannot say definitely how many feet I was from the intersection. The other car was much nearer the intersection at this time than my car. I am well acquainted with this intersection as I travel it each day and know that there is a stop sign on the road the other car was travelling before entering intersection. I cannot say if the other car stopped or slowed up. It started into the intersection and I immediately applied brakes. My vehicle went into a solid skid. The front of my car struck the adverse vehicle in its left side. The force of impact knocked the other car up against a tree in the southeast corner of intersection. My car came to a stop beside the other car entangled it in its left side. I walked around to the other car and saw a man lying on the ground a few feet from the right side of the adverse car. . . . My vehicle was in good mechanical condition, good brakes and steering gear."

Aaron Etheridge, who arrived at the scene shortly after the collision, testified for plaintiff: "The 1954 Plymouth was pushed into the 1957 Plymouth between the wheel of the 1957 Plymouth up to its windshield, especially on the right-hand side. The 1954 Plymouth was pushed into and inside of the 1957 Plymouth up to the windshield of the 1954 Plymouth . . . . The righthand front of the 1957 automobile was up against this oak tree. The oak tree was slightly mashed into the Plymouth, or the fender, rather, and the headlight was pressed against the tree and wrapped around the tree." Etheridge saw the dead body of plaintiffs' intestate lying 13 feet from the right side of the 1957 Plymouth. The seat of this car was between the body and the car. There was no front seat in the 1957 Plymouth when he looked into it.

The left side of the 1957 Plymouth was torn all to pieces: it was "just bent almost flat." Its frame, which is a little heavier than an average car because it is a box frame, was bent, and its whole side panel, door, steering column, steering wheel, front fender and floorboard were pushed in and wrinkled up. The 1957 car had other damage. The 1957 Plymouth had a door with a safety catch, which locks the door when it is pushed to. A witness said: "When the door is closed on this car you can't open that door unless you move the handle. You can't hardly knock it open. . . . The seat shown on the ground was attached to the floor of the car. It had some brackets in the floor and the seat is attached to the brackets. It has eight steel rivets holding the mechanism of this bottom of the seat that moves the seat up and down. This mechanism is attached to the brackets in the seat and

is held by eight steel rivets . . . . They were broken off." The right-hand door of the 1957 Plymouth was bent by the seat hitting the door, when it went out of the car.

This is the testimony of Aaron Etheridge as to the skid marks he saw at the scene immediately after the collision: "I saw heavy skid marks on the Sims-Rock Ridge Road running from north to south — they were on the right-hand side. I would say that the easterly skid mark was approximately 18 inches from the center line of the Rock Ridge-Sims highway. They bore slightly to the left. I measured the heavy skid marks and they were 44 feet long starting from where it started skidding at to the center of the intersection. The straight skid marks were 44 feet long and bearing slightly to the left of the straight line on this highway. There were other skid marks there. Where the heavy skid marks stopped, some more skid curved right on around to this tree. . . . The straight skid marks ended near the center of the intersection. I measured the skid marks from the point where the straight skid marks stopped to the cars that were at the tree, and they were 54 feet long."

At a point about 200 feet north of the intersection there is an embankment approximately 7.8 feet higher than the intersection and approximately 3.8 feet higher than the Rock Ridge Road at that point, which embankment diminishes in height to the intersection. There are approximately one or two pecan trees pretty close to the embankment, and three, four or five pecan trees there. Between the embankment and the highway is a road ditch. On the southwest side of Bullock School Road near the intersection is a tobacco barn, on the southeast side of this road as it approaches the intersection is a frame store.

Plaintiffs' second assignment of reror is to the entry of the judg-permit Aaron Etheridge and Floyd Nichols to testify that the Bullock School Road accommodated more vehicular traffic than the Rock Ridge Road, and that several school busses crossed this intersection every school day.

Plaintiff's second assignment of error is to the entry of the judgment of involuntary nonsuit at the close of their evidence.

Plaintiffs' evidence shows that facing their intestate, as he drove a 1957 Plymouth automobile easterly on Bullock School Road, and approached the intersection of this highway with Rock Ridge Road, was a Highway Stop Sign on the southwesterly side of Bullock School Road approximately 34 feet from the center of the intersection of these two highways. The time was 7:30 a. m. The weather was cloudy, road dry and visibility good.

By the express provisions of G.S. 20-158(a) it was unlawful for plaintiffs' intestate to fail to stop the automobile he was driving in obedience to this Highway Stop Sign, and yield the right of way to

defendant's automobile approaching the intersection on Rock Ridge Road, the designated main travelled or through highway. This statute further provides, "No failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence."

This Court said in *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17: "The operator of an automobile, traveling upon a designated main traveled or through highway and approaching an intersecting highway, is under no duty to anticipate that the operator of an automobile approaching on such intersecting highway will fail to stop as required by the statute, and, in the absence of anything which gives or should give notice to the contrary, he will be entitled to assume and to act upon the assumption, even to the last moment, that the operator of the automobile on the intersecting highway will act in obedience to the statute, and stop before entering such designated highway."

This Court also said in *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373: "However, the driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway. It is his duty, nothwithstanding his favored position, to observe ordinary care. . . ."

Is the evidence of the plaintiffs, considered most favorably in their behalf, sufficient to carry the case to the jury that the defendant, who was on the dominant, through highway, failed to exercise ordinary care toward traffic approaching on an intersecting highway, which had on it a Highway Stop Sign?

As defendant approached the intersection, he saw an automobile, which plaintiffs' intestate was driving, approaching the intersection on Bullock School Road from the west headed east. There is no evidence as to the speed of the automobile driven by plaintiffs' intestate, nor is there any evidence as to whether this automobile stopped or slowed up before entering the intersection. When this car entered the intersection, the defendant immediately applied his brakes, and his car went into a solid skid. After the collision there were heavy skid marks 44 feet long from where defendant's car started skidding to the center of the intersection where the collision occurred. Certainly, there is no evidence tending to show that defendant failed to keep a reasonably careful lookout, and to keep looking, for as soon as the 1957 Plymouth entered the intersection he applied his brakes. The embankment to defendant's right and the trees on and near the embankment did not prevent defendant from seeing the approaching 1957 Plymouth.

No eyewitnesses testified as to the speed at which defendant's auto-

mobile was being operated. However, plaintiffs contend that the solid skid marks 44 feet long, the curving skid marks 54 feet long from the place where the solid skid marks stopped to where the two automobiles stopped, the damage to the 1957 Plymouth with the front part of defendant's automobile in it up to the windshield, the ejection of plaintiffs' intestate and the front seat through the 1957 Plymouth's right door, which has a safety catch, and other physical facts, permit a reasonable inference that defendant was driving at a speed greater than was reasonable and prudent under the conditions then existing, and was not keeping his automobile under reasonable control, and this is further true because their excluded evidence tends to show that Bullock School Road accommodated more vehicular traffic than the Rock Ridge Road, and several school busses crossed the intersection every school day. In support of their contention plaintiffs cite this statement from *Adcox v. Austin and McIntyre v. Austin,* 235 N.C. 591, 70 S.E. 2d 837: "The impact and destructive results of the collision itself could properly be regarded as tending to indicate excessive speed. 'There are a few physical facts which speak louder than some of the witnesses.'"

This Court said in *Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879: "When, in a case such as this, the plaintiff must rely on the physical facts and other evidence which is circumstantial in nature, he must establish attendant facts and circumstances which reasonably warrant the inference that the death of his intestate was proximately caused by the actionable negligence of the defendant."

The plaintiffs, to carry their case to the jury against the defendant on the ground of actionable negligence, must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts. *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258.

"An inference of negligence cannot rest on conjecture or surmise." *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670.

Negligence is not presumed from the mere fact that plaintiffs' intestate was killed in the collision. *Robbins v. Crawford,* 246 N.C. 622, 99 S.E. 2d 852.

There is no evidence as to what speed defendant's automobile must have been travelling, when it hit the 1957 Plymouth automobile on its left side, to go into the 1957 Plymouth automobile up to the windshield of defendant's automobile, nor as to the strength of the side of the 1957 Plymouth automobile to resist the impact of such a blow as it received. Viewing the evidence of plaintiffs, including the excluded evidence, in its light most favorable to them, we find no support for any reasonable inference that defendant was operating his automobile under the circumstances then existing at a speed greater than was reasonable and proper, or that he was not keeping his automobile

under reasonable control, or that there was any negligence on his part, which was a proximate cause of the collision and resulting death of plaintiffs' intestate.

There is no evidence that plaintiffs' intestate stopped at the Highway Stop Sign. The sole evidence on this point is the defendant's statement offered in evidence by plaintiffs: "I cannot say if the other car stopped or slowed up." The only reasonable conclusion that can be drawn from the evidence is that plaintiffs' intestate, whether he stopped at the Highway Stop Sign or not, failed to exercise due care to yield the right of way to defendant's automobile approaching the intersection on the dominant highway, and which he could have seen approaching the intersection if he had looked to his left — the defendant saw him—, but instead negligently drove the 1957 Plymouth automobile directly into the intersection across the path of defendant's approaching automobile. Irrespective of the defendant's negligence, if any, unquestionably the negligence of plaintiffs' intestate was a proximate cause of the collision. This suffices to bar recovery herein. *Edens v. Freight Carriers,* 247 N.C. 391, 100 S.E. 2d 878; *Robbins v. Crawford, supra; Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Edwards v. Vaughn and Mims v. Vaughn,* 238 N.C. 89, 76 S.E. 2d 359; *Morrisette v. Boone Co.,* 235 N.C. 162, 69 S.E. 2d 239; *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239.

The defendant in his answer pleaded as a defense contributory negligence of plaintiffs' intestate. Whereupon, plaintiffs filed a reply pleading the last clear chance or discovered peril doctrine. *Dowdy v. R. R. and Burns v. R. R.,* 237 N.C. 519, 75 S.E. 2d 639; *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337. Such doctrine is not applicable to the evidence in the instant case. The evidence is insufficient to support a jury verdict that the defendant, after he saw or by the exercise of due care should have seen that plaintiffs' intestate was not going to yield him the right of way, then had sufficient time to enable him in the exercise of due care to have stopped his automobile, or otherwise to have acted, so as to avoid the collision.

What the Court said in *Houston v. Monroe,* 213 N.C. 788, 197 S.E. 571, is applicable here: "In the circumstances thus disclosed by the record, we are constrained to hold that the demurrer to the evidence should have been sustained, if not upon the principal question of liability, then upon the ground of contributory negligence."

The judgment of involuntary nonsuit entered below is

Affirmed.