WILLIAM H. BONDURANT, ADMINISTRATOR OF THE ESTATE OF CHARLES RAY BAKER, DECEASED, v. JOHN MASTIN, INDIVIDUALLY, AND TRADING AND DOING BUSINESS AS "HOLLAND, MASTIN AND SALE COMPANY," AND AS "H. M. & S. REFRIGERATED SERVICE;" AND JOHN RALPH SLOOP AND EDWARD ELLIS PREVETTE.

(Filed 23 March, 1960.)

**1. Automobiles § 6—**

G.S. 20-140 relating to reckless driving, G.S. 20-141 (b) (3), relating to speed limit of vehicles other than passenger cars, G.S. 20-141(c), relating to reduction of speed when special hazards exist, and G.S. 20-146 and G.S. 20-148, relating to driving on the right side of the highway, prescribe legislative standards of care, which are absolute.

**2. Automobiles § 41c— Evidence held sufficient on question of whether negligence of one driver, in creating emergency, was proximate cause of collision between two other vehicles.**

Evidence tending to show that defendant driver was operating his tractor-trailer recklessly and at excessive speed across a narrow bridge, that as he cleared the bridge his vehicle was some four feet to his left of the center of the highway, forcing an approaching motorist, in attempting to avoid a collision, to drive his automobile off the highway to his right, resulting in his losing control so that in attempting to get back on the highway he crashed into a following vehicle, is held sufficient to be submitted to the jury on the question of the negligence of the driver of the lead vehicle as the proximate cause of the collision even though there was no, or only slight, contact between the car and

the lead vehicle, since the driver of the lead vehicle might reasonably foresee that some injury would result to the   driver of the automobile in being forced off the road.

**3. Negligence § 7—**

Although foreseeability is an essential element of proximate cause it is not required that the injury in the exact form in which it occurred be foreseeable but only that consequences of a generally injurious nature might have been expected.

**4. Automobiles § 19—**

A motorist confronted with an emergency created by the negligence of another is not held to the wisest choice of conduct but only to such choice as a person of ordinary prudence similarly situated would have made.

**5. Automobiles § 42a—**

Evidence tending to show that a vehicle approached from the opposite direction on its left of the center of the highway, and that plaintiff, to avoid colliding with it, ran off the road to his right, lost control, and, in attempting to get back on the highway, collided with a following vehicle, *is held* not to disclose contributory negligence on the part of the plaintiff as a matter of law, plaintiff being confronted with a sudden emergency.

**6. Negligence § 24a—**

Nonsuit on the ground of contributory negligence is proper only when the facts necessary to show contributory negligence appear so clearly that no other conclusion can be reasonably drawn from the evidence.

APPEAL by defendants John Mastin and John Ralph Sloop from *Froneberger, J.,* 7 September 1959 Term, of LINCOLN.

Civil action to recover damages for the alleged wrongful death of plaintiff's intestate, Charles Ray Baker, and for the destruction of plaintiff's intestate's automobile.

The jury found by its verdict that plaintiff's intestate was not killed and his automobile was not damaged by the joint and concurrent negligence of the defendants as alleged; that his intestate was killed and his automobile damaged by the sole negligence of defendant John Ralph Sloop, agent of John Mastin; that his intestate was not killed and his automobile was not damaged by the sole negligence of defendant Edward Ellis Prevette, agent of John Mastin; that plaintiff's intestate was not guilty of contributory negligence; and awarded damages in the amount of $25,000.00 for the death of plaintiff's intestate, and damages in the amount of $2,000.00 for the destruction of the automobile of plaintiff's intestate.

From a judgment entered in accord with the verdict, defendants John Mastin and John Ralph Sloop appeal.

*C. E. Leatherman and Harvey A. Jonas, Jr., for plaintiff, appellee.*
*Kennedy, Covington, Lobdell & Hickman and R. Cartwright Car-*
*michael, Jr., for defendants, appellants.*

PARKER, J.  The three defendants filed a joint answer, in which it
is admitted that defendant John Mastin does business under the name
of both Holland, Mastin and Sale Company and of H. M. & S. Re-
frigerated Service, of which he is sole owner. The answer also alleges
that defendant John Mastin was engaged in the business of trans-
portation by tractors and trailers of commodities and foodstuffs, and
on 16 November 1958 Holland, Mastin and Sale Company was the
registered owner of a 1956 Mack tractor and John Mastin was the
registered owner of a 1955 Mack tractor. The answer also admits that
at the times referred to in the complaint defendant John Mastin's 1956
Mack tractor and 1957 Dorsey trailer combination was being operated
by defendant John Ralph Sloop as the agent, servant and employee
of defendant John Mastin, operating under his firm name, in the course
of his employment and in furtherance of the business of his master
and codefendant John Mastin. The answer has a similar admission as
to the defendant Edward Ellis Prevette, except that he was operating
a 1955 Mack tractor and 1956 trailmobile trailer combination.

Defendants have three assignments of error: one, the denial of their
motion for judgment of nonsuit made at the close of plaintiff's evi-
dence, two, the denial of their motion for judgment of nonsuit renew-
ed at the close of all the evidence, and three, the entry of the judg-
ment.

Defendants' contentions are, that if the defendants John Ralph
Sloop and John Mastin were negligent, such negligence was not the
proximate cause of the death of plaintiff's intestate and of damage to
his automobile, and two, that if defendants are guilty of actionable
negligence, then plaintiff should have been nonsuited because of the
contributory negligence of his intestate.

Plaintiff's evidence, and defendants' evidence favorable to him, or
which tends to explain and make clear that which has been offered
by plaintiff, tends to show the following facts: The time was about
3:30 p. m. Sunday, 16 November 1958. The scene was on U. S. High-
way # 321  about one mile north of the town of Dallas near Little
Long Creek Bridge. This bridge is 47 feet long and its roadway is
20 feet wide. About 600 feet north of this bridge is a State Highway
sign marked "Narrow Bridge." The asphalt pavement of the high-
way at this point is 22 feet wide. Robert M. Wingo, a surveyor and
witness for the defendants, testified: "I measured the width of the

highway on the south side of the bridge just before it goes onto the bridge. . . . The highway varies in width from 22 feet coming around the curve down to 19 feet on approach to the bridge." This highway had been resurfaced about 6 months prior to 16 November 1958, which raised the pavement 3 or 4 inches above the shoulder or dirt portion of the highway, and this extends to where the guardrails come to the edge of the bridge. Approaching the bridge from the south and going north to Lincolnton, the highway curves to the right, then turns to the left going down hill, then straightens and makes another left curve and approaches and leads up to the south edge of the bridge. When the road was built, an embankment was constructed about 10 feet high to afford an approach to the south end of the bridge, and the highway is about 10 feet higher than the adjacent land. On the south side of the bridge are guardrails, and on the eastern side of the highway these guardrails extend south about 48 feet from the abutments of the bridge. From the bridge to the end of the guardrails the dirt shoulder is very narrow, varying from one to four feet. From the end of the guardrails south the dirt shoulders widen out several feet. Approaching this bridge from the north and going south to Dallas the highway goes straight down a long hill and on to the bridge.

The defendant John Ralph Sloop driving south his codefendant John Mastin's 1956 Mack tractor and 1957 Dorsey trailer combination entered on this bridge travelling at a speed of 60 to 65 miles an hour. Following Sloop at a distance of about 80 feet was a 1955 Mack tractor and 1956 trailmobile combination owned by defendant John Mastin and driven by defendant Edward Ellis Prevette at about the same speed. Approaching this bridge at the same time and travelling north was a 1957 Buick automobile driven by William H. Bondurant at a speed of 40 to 45 miles an hour up to within 200 feet of the bridge. Following Bondurant's automobile was a 1957 Mercury automobile owned and driven by plaintiff's intestate, Charles Ray Baker, at a similar speed. In Baker's automobile as passengers were his wife, his two children, his sister and her son. The Bondurants and the Bakers were relatives. On this Sunday they had visited in Lowell the father of Mrs. Bondurant and Charles Ray Baker, had left there about 3:10 p. m., and were returning to Lincolnton. When the automobile driven by Bondurant was about 100 feet from the bridge, and going north, the tractor-trailer combination driven by Sloop at a speed of about 60 to 65 miles an hour going south was coming off the bridge weaving and straddling all three of the highways lines in the center of the highway. Bondurant pulled his automobile off the highway for Sloop to pass, got back on the highway, entered the bridge,

and on about the middle of the bridge passed the tractor-trailer combination driven by Prevette at a speed of about 60 to 65 miles per hour going south. As Bondurant was going off the bridge north, he heard Prevette "hit his brakes."

As the tractor-trailer combinations coming south approached the bridge, Charles Ray Baker travelling north and following Bondurant slowed down his automobile. Mrs. Bernice Baker Stafford, a sister of Charles Ray Baker and a passenger in his automobile on the front seat, testified as follows, as a witness for plaintiff: "The Bill Bondurant car was off of the highway to keep from being hit by the first tractor-trailer as it came off of the bridge. Naturally, our car was proceeding on down the highway at a slower rate of speed all the time. My brother went to the right side of the road, the east side, with the right front wheel. The Sloop tractor-trailer at that time was coming directly at us over on our side of the road. He was 4 or 5 feet over the center line on our side. The tractor was headed directly at us. Mr. Sloop was driving the first tractor-trailer. He was trying to pull it back on his side of the road. The trailer part of that tractor was leaning toward us. I don't remember the tractor part, but the trailer just loomed up at us, and I felt this terrific jolt and a loud squishing of air, and I looked up and the second tractor-trailer hit us. In my opinion, the first Sloop tractor-trailer was making 60 or 65 miles an hour when it passed us. As we were slung back into the highway, the Prevette tractor-trailer was coming off the bridge. The next thing I remember was that I got up off of the road. I was partly on the highway and partly on the shoulder on the west side. The right front wheel of the car of Charles Ray Baker was leaving the highway on the east side, and we were a little better than 125 feet from the south edge of the bridge as he left the highway."

When Bondurant drove his automobile on the bridge, he saw through his rear view mirror Charles Ray Baker's automobile leave the highway on the east side at a point 100 or 115 feet south of the bridge. He did not look further as he was meeting the Prevette tractor-trailer on the bridge. When Bondurant drove his automobile off of the bridge, he looked again in his rear view mirror, and saw the Baker automobile coming back into the highway at about a 90-degree angle toward the center line.

The tractor-trailer combination driven by Sloop did not stop, and left the scene. Bondurant went back to the wreck. When he arrived, the Prevette tractor-trailer was over in a field west of the highway. The Baker automobile was at an angle headed north about 8 feet on the west side of the trailer. Charles Ray Baker was lying in the cen-

ter of the highway dead. Also killed in the wreck were Mrs. Stafford's son, and Charles Ray Baker's daughter.

W. L. Garrison, a state highway patrolman and a witness for plaintiff, arrived at the scene of the wreck shortly after it occurred. He testified without objection in substance: that he determined the point of impact between the Baker automobile and the Prevette tractor-trailer combination to be about 42 feet from the end of the bridge, and when he arrived, the Prevette tractor-trailer combination was about 85 feet from the point of impact, and off the highway. Baker's automobile was down the embankment 8 feet north of the drive wheel of the tractor. The front part of the Prevette tractor was badly damaged, mostly on the right side. The Baker automobile was extensively damaged, and beginning at the rear seat was badly damaged and mashed in, and the top was mashed in and pinched together. The tractor-trailer combinations driven by Sloop and Prevette were about 47 feet long and the weight of each combination was in excess of the one-ton limit. At the scene defendant Prevette told Garrison he was the only tractor-trailer involved, and that he was not following another tractor-trailer. The patrolman carried him from the scene to a hospital. There, in the presence of Mrs. Bernice Baker Stafford, he said to Garrison he was following another tractor-trailer driven by Sloop. At the scene Prevette told Garrison the Baker automobile made a turn or whipped right in front of him and was skidding sideways, and he could not avoid hitting him. When Prevette testified as a witness for himself, he said: "When the truck and the car collided or came into contact, it seemed like the front of my tractor reared up in the air and went over the car, and the car skidded off to the right, and my truck went off the bank to the right."

Patrolman Garrison testified on direct-examination for plaintiff: "In relation to where the debris on the road and the 1957 Mercury were, I saw skid marks extended from the debris area here, extending in a southerly direction, and they came down the right side of the highway, and off of the roadway, similar to that (marker pointing to a point on the diagram), and the dirt was dug up here, and gravel, leading up to the Mercury automobile:" Garrison testified on cross-examination: "On plaintiff's Exhibit K, certain skid marks that were made on the easterly side of the highway and went along the highway as I have described by saying that it hooked over into the westerly lane do show on that photograph as being partially on the shoulder of the road." The day after the wreck Garrison saw and walked around the Sloop tractor-trailer combination. He found it had no appreciable damage.

Plaintiff has alleged, and offered evidence tending to show, that defendant Sloop at the time and place where the wreck occurred was guilty of negligence in the operation of his tractor-trailer combination as follows: One, he was operating it carelessly and heedlessly in violation of G.S. 20-140. Two, he was operating it in violation of the speed limit prescribed for such a motor vehicle by G.S. 20-141(b)(3). Three, he failed to decrease the speed of his tractor-trailer combination when a special hazard existed in respect to approaching automobiles by reason of a narrow bridge and curve in violation of G.S. 20-141(c). Four, he drove his tractor-trailer combination, when he was meeting and passing the automobile driven by plaintiff's intestate, some 4 or 5 feet to the left of the center of the highway in the direction he was travelling in violation of G.S. 20-146 and G.S. 20-148. *Stegall v. Sledge,* 247 N.C. 718, 102 S.E. 2d 115; *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331; *Singletary v. Nixon,* 239 N.C. 634, 80 S.E. 2d 676; *Boyd v. Harper,* 250 N.C. 334, 108 S.E. 2d 598. These statutes prescribe a standard of care for a motorist, "and the standard fixed by the Legislature is absolute." *Aldridge v. Hasty, supra.*

Plaintiff's evidence permits a jury's making the legitimate inference that Sloop, by his negligent operation of his tractor-trailer combination, as above set forth, in the exercise of ordinary care might have reasonably foreseen that plaintiff's intestate meeting him on the highway would have to turn in whole or in part off the highway to avoid being struck by the tractor-trailer combination, might lose control of his automobile, and that by losing control of his automobile some injury to plaintiff's intestate would result from such operation of his tractor-trailer combination, or that consequences of a generally injurious nature might have been expected. "Foreseeability as an essential element of proximate cause does not mean that the defendant is required to have been able to foresee the injury in the exact form in which it occurred. *Riddle v. Artis,* 243 N.C. 668, 91 S.E. 2d 894. 'All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in "the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." ' *Hart v. Curry,* 238 N.C. 448, 78 S.E. 2d 170." *White v. Dickerson, Inc.,* 248 N.C. 723, 105 S.E. 2d 51.

These were the facts in *Cotton Co. v. Ford,* 239 N.C. 292, 79 S.E. 2d 389; Plaintiff's automobile was proceeding south. Proceeding in the same direction, in front of plaintiff's automobile, was the tractor-trailer truck of defendants Ford. As the truck approached the north-

ernmost bridge, defendant Brigman driving an automobile was coming from the opposite direction, going north. Brigman crossed the southernmost bridge and drove on across the northernmost bridge just before the truck reached it. After crossing the bridge, just ahead of the truck, Brigman drove to the right onto the shoulder, nearly into the ditch, then righted his automobile but skidded into and collided with plaintiff's automobile which was in the rear of the truck. As a result, both automobiles were damaged, and Brigman sustained a personal injury. Neither automobile came in contact with the truck of the defendants Ford, which proceeded on south. Plaintiff and Brigman contended that the truck of the defendants Ford was being driven at an unlawful speed and to the left of the center of the highway, making it necessary for Brigman to turn to his right off the pavement to avoid being struck. The jury found by its verdict that both the damage to plaintiff's automobile and damage to Brigman's person and automobile was caused by the negligence of the defendants Ford, and awarded substantial damages. The Court held that the motion of defendants Ford for judgment of nonsuit was properly overruled. No error was found in the trial.

The facts in *MacIntyre v. Waggoner and Inland Motor Co.*, 171 Wash. 191, 18 P. 2d 15, were very similar to the facts in our case of *Cotton Co. v. Ford,* and the result was the same as in our case. The Court held: One, the truck driver's negligence in driving partly on left side of highway, forcing driver from opposite direction to drive on shoulder and skid into car following truck driver while attempting to get back on pavement was proximate cause of collision. Two, motorist forced to drive on shoulder by truck driver in opposite direction encroaching on left side of highway held not contributorily negligent in skidding into car following truck while attempting to get back on pavement.

This is said in 60 C.J.S., Motor Vehicles, pp. 741-2: "Ordinarily, where a driver turns onto or remains on his own lefthand side of the road, or fails to yield one half of the main traveled portion of the roadway as nearly as possible, notwithstanding the approach of a vehicle proceeding in the opposite direction, he or the one responsible whether caused by an actual collision or by the other vehicle being forced off the road in the effort to avoid danger. However, liability for his acts may be held liable for any injury resulting therefrom, may exist where, and only where, the operator's negligence in driving or turning to the left or in failing to yield one half of the way was the proximate cause of the injury, as in the case of a collision between

the approaching vehicle and a following vehicle, or injury to a pedestrian."

We are of opinion that plaintiff's evidence would warrant a finding by the jury that his intestate's automobile to avoid an impending collision was forced in whole or in part off the pavement of the highway by Sloop's negligence in the operation of his tractor-trailer combination, and that his intestate's driving or skidding back upon the pavement of the highway with his automobile, and the resulting collision with the Prevette tractor-trailer combination followed so quickly and is so connected with the negligence of Sloop, that it constituted a direct chain of events resulting from the negligence of Sloop in the operation of his tractor-trailer combination, and that such negligence on the part of Sloop was the proximate cause of plaintiff's intestate's death.

Considering plaintiff's evidence, and defendants' evidence favorable to him, as we are required to do on a motion for judgment of nonsuit, defendants' contention that such evidence does not show that plaintiff's intestate's automobile was forced off the pavement of the highway by Sloop is not tenable: such evidence tends to show otherwise.

Plaintiff's evidence tends to show that his intestate was confronted by a sudden emergency by Sloop's tractor-trailer combination meeting him on a curve, driven at a speed of 60 to 65 miles an hour some 4 or 5 feet over the center line of the pavement. If the jury should so find, plaintiff's intestate was confronted with a sudden emergency not of his own making and to which he did not contribute, and he cannot be held responsible or liable for errors of judgment committed by him in the emergency where he was compelled to act instantly in an effort to avoid an impending collision. In such circumstances plaintiff's intestate cannot be said to be guilty of contributory negligence if he made such a choice as a person of ordinary prudence similarly situated would have made, even though it appear later that he did not make the wisest choice. He is not held to the same coolness, accuracy of judgment or degree of care that is required of him under ordinary circumstances. *Lamm v. Gardner,* 250 N.C. 540, 108 S.E. 2d 847; *Simmons v. Rogers,* 247 N.C. 340, 100 S.E. 2d 849; *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593; *Ingle v. Cassady,* 208 N.C. 497, 181 S.E. 562; *Hinton v. R. R.,* 172 N.C. 587, 90 S.E. 756.

In the following cases where a driver confronted with another car approaching on the wrong side of the road turned to his right and successfully avoided a collision with the approaching car, but in do-

ing so struck a third car or a pedestrian, it has been held that a finding that he acted with reasonable care under the circumstances was justified. *Webb v. Hardin,* 53 Ariz. 310, 89 P. 2d 30; *Scaletta v. Silva,* 52 Cal. App. 2d 730, 126 P. 2d 898; *Rzeszewski v. Barth,* 324 Ill. App. 345, 58 N.E. 2d 269; *Moreland's Adm'r. v. Stone,* 292 Ky. 521, 166 S.W. 2d 998; *MacIntyre v. Waggoner and Inland Motor Co., supra;* Annotation 47 A.L.R. 2d 123 *et seq.* See *Hart v. Ruduk,* 253 N.Y.S. 615, 233 App. Div. 453; *Hogge v. Anchor Motor Freight,* 277 Ky. 460, 126 S.W. 2d 877.

In *Journigan v. Ice Co.,* 233 N.C. 180, 63 S.E. 2d 183, the Court said: "The fact the impact occurred slightly over the center line and on the western side, which was to the plaintiff's left, is not controlling or conclusive on the issue of contributory negligence. It is the position of plaintiff that the truck looming up over the hill on its left side of the road and speeding up in order to get around the parked cars before returning to its right side of the road, forced the driver of the Journigan car to apply his brakes and thus produced the collision." See also *Henderson v. Henderson,* 239 N.C. 487, 80 S.E. 2d 383; *Winfield v. Smith,* 230 N.C. 392, 53 S.E. 2d 251; *Patterson v. Ritchie,* 202 N.C. 725, 164 S.E. 117.

In our opinion, a study of plaintiff's evidence does not establish facts necessary to show contributory negligence so clearly that no other conclusion can be reasonably drawn therefrom. Such being the case, a judgment of nonsuit on the ground of contributory negligence would have been improper. *Johnson v. Thompson,* 250 N.C. 665, 110 S.E. 2d 306; *Tew v. Runnels,* 249 N.C. 1, 105 S.E. 2d 108; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19.

The trial court was correct in overruling the motion for judgment of nonsuit renewed by the defendants Sloop and Mastin at the close of all the evidence, and correctly submitted the case against them to the jury.

In the trial below, we find

No error.