ELWOOD SECHLER, ADMINISTRATOR OF THE ESTATE OF W. R. SECHLER, v. NEVIN P. FREEZE, ALIAS JAKE FREEZE.

(Filed 19 November, 1952.)

**1. Trial § 22b—**

Defendant's evidence which is not at variance with plaintiff's evidence but which tends to explain and implement it, may be considered on motion to nonsuit.

**2. Automobiles §§ 16, 18h (2)—**

Evidence tending to show intestate parked his car on the extreme right of the hard surface highway on a dark and misty night, alighted and walked around in front of the car, and that as defendant turned to his left to pass the parked vehicle, intestate suddenly ran in front of his car and was struck about the head and shoulders by the right front of defendant's car *is held* insufficient to be submitted to the jury on the issue of negligence.

APPEAL by plaintiff from *Clement, J.,* May Term, 1952, of ROWAN.

Civil action by plaintiff to recover damages for the alleged wrongful death of his intestate, who was hit by an automobile driven by the defendant.

The families of the defendant Freeze and the intestate Sechler were neighbors, with homes a few hundred yards apart on the Saw-Mill Bridge road near Landis in Rowan County. During the early morning of 18 February, 1951, before daylight, the defendant's father suddenly became ill. The defendant arose and drove to Landis to call a doctor. In the interim, the defendant's sister phoned intestate's wife for help, whereupon intestate set out immediately for the Freeze home. Meanwhile, the defendant was returning from Landis. At a point about 200 yards from the home of defendant's father, the intestate stopped his car on the paved portion of the highway, got out, and moved to a position on the road somewhere near the front of his car. The defendant, approaching from

the rear, turned left, passed alongside the parked car, and collided with the intestate. The defendant's car traveled a short distance across the pavement to the left and went into the side ditch at an angle almost perpendicular to the road.

The intestate, critically injured, died four days later. The defendant was the only surviving eyewitness. It does not appear why the intestate came to park his car and get out on the highway in front of the defendant's approaching car.

The plaintiff's evidence may be summarized as follows: The injury occurred between 4:00 and 5:00 o'clock in the early morning. It was cold, dark, foggy, and misty. No rain—"only a heavy fog and mist." The paved portion of the highway was 18 feet wide, and the shoulders on each side were approximately 8 feet wide. The highway was straight and level. Dr. Black, first to arrive, said he could see the tail light on intestate's car for a distance of 300 feet.

The intestate's car was parked on the pavement on its right side. The right front door was open. The left front door was unlatched but not open. Dr. Black said: "I don't remember whether the car was all on the shoulder or part on the shoulder and part on the hard surface." Patrolman Simmons said: "The car was all on the pavement to the best of my knowledge, all four wheels."

Elwood Sechler, son of intestate, who said he reached the scene about 5:00 o'clock, testified: ". . . My daddy's car, a 1939 Ford, (was) parked on the extreme right of the highway. . . . It was in the right lane, extreme right. I saw another car (the defendant's). It was in the left hand ditch around 40 or 50 feet in front of my daddy's parked car. . . . I noticed approximately 50 feet behind my daddy's car heavy skid marks. I stepped 32 full steps from the beginning of the skid marks to where the Pontiac (defendant's car) stopped. . . . The skid marks . . . straddled the center line as they went by my father's car and then in a few feet in front of Daddy's car they started turning to the left. The front end turned to the left and the skid marks went right on into the bank directly under those tires. I saw blood on the highway approximately 10 feet directly in front of my daddy's car and about 4 feet from the right-hand edge of the pavement." Cross-examination: ". . . The marks were gradually leading to the left. They started about a foot from the edge of the right-hand pavement directly behind Daddy's car approximately 50 feet."

Patrolman Anthony said: ". . . Several days later I had a conversation with Jake Freeze. He told me he started home and he run up on this car parked in the road and there was a man standing beside of the car and he threw up his hands in the air like that and ran across the road in front of his car. . . . He told me he couldn't have missed the man."

One of the witnesses who said he examined the defendant's car stated: ". . . there was a dent on the extreme outside rim. There were a few splotches of blood underneath the right headlight on the (defendant's) Pontiac car."

Dr. Creighton Wrenn, who attended intestate at the hospital, said: ". . . He had a fractured skull, . . . an extensive head and face injury, a crushing blow, . . . in the lower portion of his facial in a downward manner, . . . He . . . had a fractured left arm and other bruises about his shoulder and elbow, . . ." Cross-examination: ". . . I found no grave injury to his legs and I don't think any to his hips."

The defendant's version of the occurrence, given as a witness in his own behalf, is in substance. ". . . about 200 yards from home I seen this car around 50 or 60 feet ahead of me and I pulled over like one would to go around the car. . . . and just as I got at the rear of the Sechler car I saw a man come out with both hands up like that in front of my car. I cut the wheels in the ditch as hard as I could. The man came from in front of his car. I got a quick turn into the ditch on the left as quick as I could whenever I saw him. . . . As I approached the back end of this Sechler car I was going around 25 miles per hour. As I saw the car, I put on brakes and started slowing down. At the time I saw him step in front of my car I was going around 15 miles per hour."

The defendant's motion for judgment of nonsuit, made at the close of the plaintiff's evidence and renewed at the conclusion of all the evidence, was allowed, and from judgment based on such ruling the plaintiff appealed.

*Woodson & Woodson and Hudson & Hudson for plaintiff, appellant.*
*Robinson & Jones for defendant, appellee.*

JOHNSON, J. The single question presented by this appeal is whether the court erred in allowing defendant's motion for judgment as of nonsuit.

The plaintiff's evidence is not at variance with the defendant's version of how the injury occurred. Indeed, the testimony of Dr. Wrenn, showing grave injuries to the head and arm but no serious injury to legs or hips, indicates that intestate was not struck by the bumper of the car, but rather tends to show that he must have lunged forward, as the defendant said, with his arm and head coming in contact with the front part of the car above the bumper where the signs were found.

The evidence adduced below, when viewed in its light most favorable to the plaintiff, fails to make out a *prima facie* case of actionable negligence against the defendant. The case is controlled by the principles explained and applied in *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246. See also *Aydlett v.*

*Keim,* 232 N.C. 367, 61 S.E. 2d 109; *Buccilli v. Shanahan,* 266 Pa. 342, 109 A. 634. Negligence is not to be presumed from the mere fact of injury or that the intestate was killed. *Tysinger v. Dairy Products, supra.* The decisions relied on by plaintiff are distinguishable.

In this view of the case, we do not reach for decision the question of contributory negligence of the intestate.

The judgment below is

Affirmed.