MACK THOMAS ROBBINS, ADMINISTRATOR OF MACK THOMAS ROBBINS, JR., DECEASED, v. EMMETT L. CRAWFORD, FRANK JONES AND ALMA JONES.

(Filed 25 September, 1957.)

**1. Trial § 22b—**

On motion to nonsuit, defendant's evidence which is not at variance with plaintiff's evidence but which tends to explain and clarify it, may be considered.

**2. Automobiles §§ 39, 41a—**

Where plaintiff relies upon the physical facts at the scene of the accident to establish negligence on the part of defendant driver, the facts and circumstances relied on must be established by direct evidence and warrant the inference of negligence as a reasonable and logical conclusion, considering the evidence in the light most favorable to plaintiff, and such evidence which raises a mere conjecture or surmise of the determinative issue is insufficient.

**3. Automobiles § 36: Negligence § 17—**

Negligence is not to be presumed from the mere fact of injury.

**4. Automobiles § 41c—**

Where plaintiff's evidence and defendant's evidence in explanation and clarification thereof disclose that as defendant's tractor-trailer, traveling north, rounded a curve below an overpass, the car driven by intestate came out from the east shoulder of the road on the tractor driver's right and cut immediately in front of the tractor, such evidence fails to show that the accident resulted from negligence on the part of defendant, and nonsuit is proper.

APPEAL by plaintiff from *Fountain, Special Judge,* at December Special Term, 1956, of BEAUFORT.

Civil action brought by the plaintiff to recover damages for the alleged wrongful death of his intestate son, Mack Thomas Robbins, Jr., resulting from a collision between a tractor-trailer and an Oldsmobile passenger car.

The collision occurred around 1:30 o'clock on the morning of 13 May, 1956, on U. S. Highway No. 301 about eight miles north of Weldon, just north of the highway bridge over the Atlantic Coast Line Railroad tracks. Looking north downgrade from the top of the overpass bridge, the highway curves gradually to the right. The curve ends near where the descent from the overpass levels off. This is about 1,000 feet from the overpass. There is a drop of about 20 feet in elevation from the top of the overpass down and along the curve to the foot of the hill. A pine thicket flanks the curve on each side. From atop the overpass one can see north along the curve approximately 350 feet. The pavement is 26 feet wide with dirt shoulders on each side.

The two vehicles were traveling in opposite directions. The tractor-trailer, owned by the defendant Alma Jones, was being driven by the defendant Crawford. It was going north. The Oldsmobile, driven by the intestate, was headed south. Two male companions were in the car with him. The tractor-trailer had crossed the overpass and was approaching the foot of the hill and the end of the curve when the collision occurred. The two vehicles met near the center of the pavement. In the collision the Oldsmobile was wedged against and partially under the front of the tractor, and as so wedged it was pushed sidewise up the

highway in front of the tractor to where the vehicles came to rest, approximately 73 feet beyond where debris scattered on the highway indicated the apparent point of impact. The intestate and one of his companions were killed instantly. The other died of injuries some hours later. The defendant Crawford was knocked unconscious for a few minutes.

At the trial below, the plaintiff relied on the testimony of witnesses who testified respecting the physical facts and explanations made by the defendant Crawford to the patrolman at the scene of the wreck.

Patrolman B. Q. McDonald, called by the plaintiff, testified in part: "When I arrived at the scene it was approximately 2 o'clock A.M. . . . The automobile, which I found to be a 1955 Oldsmobile, was setting off the pavement on the left shoulder—the left shoulder traveling north— and the tractor and trailer was setting partially off the pavement and partially on the pavement. . . . I observed some skid marks which were to the right-hand lane traveling north—the beginning of the skid marks was 4 feet and 7 inches to the right of the center line traveling north. The skid marks continued for 142 feet to what I determined as the point of impact.

"The skid marks extended down the road and crossed the center line and on up to some debris—142 feet. At a point 142 feet from where the skid marks started there was a considerable amount of dirt and debris from automobiles; dirt was the majority of it. There was glass also. The center of the debris, or the majority of the debris, was 18 inches to the left of the center line traveling north. It was 73 feet and 3 inches . . . from the debris to the front of the Oldsmobile, where it stopped. . . . The truck and the car came to rest 73 feet farther north from the debris in the left-hand lane. . . . It is downgrade all the way from where it crosses the railroad to where this collision occurred. This occurred partially in the curve. I had a conversation with Mr. Crawford, the driver of the truck, and he told me that he was driving at a reasonable speed, I believe it was 43 miles per hour to be exact, . . . and that when he first crossed the crest of the hill, which was the overhead bridge, that he observed some headlights on his right on the right shoulder of the road. He stated that the lights appeared to be on bright and, due to that fact, he was not certain whether the automobile was sitting still or whether it was barely moving at that time. He stated he blinked his lights, . . . and also that he blew his horn once, and that the automobile was traveling—at the next instant he said he noticed that the automobile appeared to be moving in his lane, which would be the right lane traveling north, and that he tied on his emergency brakes of the truck, that is the way he phrased it. . . ."

Cross-Examination: "Yes, there is an area north of the scene of the accident, on the right hand side, going north, wherein cars and trucks

can park; there is a 9-foot shoulder there. . . . however there is one particular spot that is north of where the vehicles were that is a little wider than the ordinary shoulder. . . . that is the area from which the defendant Emmett L. Crawford told me that car drove out from; . . . where Mr. Crawford said the car was stopped or moving slowly at the time he first saw it. . . . I looked into the 1955 Oldsmobile. The coroner and I found an empty whisky bottle. . . . It had the odor of some type of alcohol in it. We also found some paper cups, . . . Dixie cups, small size, which also had the odor of alcohol. . . .

"Q. You testified on direct examination that you had a conversation with Mr. Crawford and that he told you a car came, that this car came from what would be his right side and cut out immediately in front of him from this parking area, is that right? A. Yes, sir."

Redirect Examination: ". . . I told Mr. Braswell that the skid marks continued on to the center line and no farther. We were looking at the picture at that time; I don't recall them extending beyond that but my measurement of 142 feet was from the beginning of the skid marks to the debris. The debris was 18 inches to the left of the center line, going north. That would be to the left of the center line of the operator of the truck. The debris was completely out of the truck operator's lane."

Recross Examination: ". . . I am not now testifying that all the debris was over on the left side of that road; . . . There was some scattered in quite a wide area; however, the center of the debris seemed to be . . . 18 inches to the left of the center line (looking north)."

Redirect Examination: ". . . There were skid marks from 142 feet south of the debris and there were also skid marks from the debris north to where the vehicle came to rest."

Recross Examination: ". . . there were two distinct and different types of skid marks . . . Yes, there was a different type of skid mark from there (the debris) to where the cars came to rest. I have testified that the left front wheel of the tractor was up on the engine or hood of the car."

At the close of the plaintiff's evidence, the motion of the defendant Frank Jones for judgments as of nonsuit was allowed. A like motion made by the defendants Alma Jones and Emmett L. Crawford was overruled. Whereupon the defendants offered evidence.

The defendant Emmett L. Crawford testified in part: "I was driving a 1953 White tractor. . . . I had a 1956 Dorsey trailer. My cargo was fresh cabbage. . . . The gross weight of . . . the cargo and the tractor-trailer was 50,630 pounds. . . . as I went over the bridge . . . I observed lights coming south, approaching me, and I noticed they did not come on immediately, they did not keep coming . . . and when I got in the curve where I could see I observed the car was either stopped or

moving slow on my right, which was his left. I blew the horn and blinked the lights a couple or three times to attract his attention and get him to dim his, as they were on bright. He never dimmed. His car was partly on and partly off the pavement, as best I observed it. I could tell the car was moving by the lights going up and down like that (indicating) and I knew he was hitting the washed out places on the shoulder, making the lights wave back and forth like that. I seen the car was moving and I tried to attract his attention . . . I seen he was coming right on and I applied the brakes attempting to stop and he came right on up on my right, his left, and when he got right up just in front of me he tried to make it to his side of the road and we had an accident. At the time of the collision I had on all brakes on the tractor-trailer combination. I was on my right-hand side of the road at the time of the collision. The right front wheel struck right in the door jamb on the left side of the car and the left wheel of the tractor struck right in the left front wheel of the car and kind of crawled up on the fender. The impact tore up the right front wheel of the tractor. After we collided we went from the point of impact over to the left-hand side of the road . . .

". . . The Oldsmobile was coming across my right-hand side of the road at about a 45-degree angle. I was traveling at a speed of around 40 to 43 miles per hour when I first applied my brakes. I don't know my speed at the point of impact; I had already slowed down then. . . . When he went across the road it seemed like the car was in a spin. He tried to whip it across the road to beat me over. . . . At the time my left front wheel went up onto the Oldsmobile my tractor and the Oldsmobile were on my side of the road."

Cross-Examination: ". . . I first saw the car when I got fully in the curve and could see down. I think about half way down. I assume it is true that it is as far as 1000 feet from the overpass to where my truck came to a stop. It is just a gradual decline going downhill. . . . I would say the car was around 75 or 100 yards away from me when I first saw it and observed it was moving. . . . he was at that time clear off the road on the wrong side of the road. He was either moving slowly or stopped when I first saw him. I would say he traveled 150 feet before his car and (the) truck collided. I believe the patrolman measured off 142 feet that I traveled while he was traveling 150 feet. I put on my brakes as soon as I saw the car and knew he was on the wrong side of the road. . . . I blew my horn once, and then put on my brakes; and then skidded 142 feet before I struck the car. . . . all that happened within approximately 225 to 300 feet."

Carlton L. Brogden, witness for the defendants, testified in part: ". . . On May 13th of this year I was employed as a truck driver . . . On that date I was traveling north on Highway 301 in the vicinity of

Weldon, N. C. I stopped at the Three Scales Truck Stop and saw Emmett L. Crawford there. I was operating a White tractor at that time. I had a trailer and was loaded . . .

"Sometime after I left the Three Scales, I run up on the truck about a mile before I got to the overpass. I followed him. Going over the overpass I run up on him pretty close. I was fixing to go around him when I got clear of the curve and out of the No Passing zone. I observed car lights, so I fell back in behind him and immediately his brake lights come on. I saw the car parked on the wrong side of the road and it come out in front of him. So I braked down pretty good, got back behind him, and the collision happened. I went on down the road and parked at this wide spot on the shoulder, come back up to the scene of the accident . . . Yes, I observed the car when it pulled out from the right shoulder, after I got over the overpass and was going down the hill. . . . the first time I saw this car it was on the right shoulder of the road. My right side; the right-hand side of the road going north. I could not tell whether the automobile was on the right-hand side of the road at the point of impact because the truck was in front of me. No, the Crawford tractor and trailer did not leave the right-hand side of the road at any time before the wreck. . . ."

Cross-Examination: ". . . I crossed the overpass right behind him (Crawford) and followed him on down the hill. . . . I don't know exactly how close I was. I was going to pass him as soon as he got around the curve. . . . Coming over that grade he was going slower than 43 miles per hour. . . . I stopped when the accident happened and eased around him. . . . At that time all of the truck and the car was over in the left-hand lane."

Defendants rest.

Allen Griffin testified for the plaintiff in rebuttal that he in company with others went to the scene of the collision, reaching there about noon, after the vehicles had been moved. He said: "We found skid marks starting, I would say, approximately 4 feet from the center of the road. The skid marks did not make any curve after he applied his brakes. He skidded 146 feet, crossed the center line 13 feet before we found the debris and scratches on the road, which continued on to where the wreck stopped 83 feet further. After it crossed the center line 13 feet from there the debris fell off the car, the chrome, the glass and several things that were identified from the wreck. . . . I measured the marks I found with a steel tape. . . ."

Cross-Examination: ". . . Yes, they (the skid marks) started four feet on the right-hand side of the road and bore gradually to the center of the road. . . ."

Redirect Examination: "I saw the other mark there. Where this collision took place, and the debris fell, 20 inches from the yellow line

was another mark that took place and skidded for about 3 feet and disappeared. . . . Yes, I said skid marks continued on across the center line, 13 feet before the debris started falling from the car. . . ."

At the close of all the evidence the defendants Alma Jones and Emmett L. Crawford renewed their motion for judgment as of nonsuit. The motion was allowed. From judgment in accordance with this ruling, the plaintiff appealed.

*S. M. Blount and John A. Wilkinson for appellant.*
*Roland C. Braswell for appellees.*

JOHNSON, J.   Defendant's evidence which is not at variance with plaintiff's evidence but which tends to explain and clarify it, may be considered on motion to nonsuit.  *Nance v. Hitch,* 238 N.C. 1, 76 S.E. 2d 461.

When the whole of the evidence in the case at hand is read in the light of this rule, it is apparent that the plaintiff's evidence is not at material variance with the defendants' version of how the wreck occurred.  Both versions disclose that as the defendant's tractor-trailer rounded the curve below the overpass, the Oldsmobile driven by the intestate came out from the east shoulder of the road, on the tractor driver's right, and cut immediately in front of him.

The plaintiff relies on the physical facts to make out his case.  However, as was said by *Barnhill, C. J.,* in *Whitson v. Frances,* 240 N.C. 733, 737, 83 S.E. 2d 879, 881, "When, in a case such as this, the plaintiff must rely on the physical facts and other evidence which is circumstantial in nature, he must establish attendant facts and circumstances which reasonably warrant the inference that the death of his intestate was proximately caused by the actionable negligence of the defendant. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670, and cases cited; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406.

"The inferences contemplated by this rule are logical inferences reasonably sustained by the evidence when considered in the light most favorable to the plaintiff.  *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Sowers v. Marley, supra.*  It cannot be made to rest on conjecture or surmise.  It must be 'a permissible conclusion drawn by reason from a premise established by proof.'  *Sowers v. Marley, supra.*"

Negligence is not to be presumed from the mere fact of injury or from the fact that the intestate was killed.  *Sechler v. Freeze,* 236 N.C. 522, 73 S.E. 2d 160; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246.

Viewing the evidence adduced below in its light most favorable to the plaintiff, we find no support for any reasonable inference of negli-

gence on the part of tractor-driver Crawford as a proximate cause of the collision.

In this view of the case it is not necessary to discuss the question of contributory negligence.

The judgment below is

Affirmed.