ELMER BOYD, ADMINISTRATOR OF CHARLES EDWARD BOYD, DECEASED, v. WILLIAM HAROLD HARPER, CLAUDE S. LEWIS AND J. E. FLEMING T/A CAROLINA MERCANTILE CO.

(Filed 20 May, 1959.)

**1. Automobiles § 15—**

The failure of a motorist to keep his car on his right side of the center of the highway in passing a vehicle traveling in the opposite direction is negligence *per se*, and whether such negligence is a proximate cause of a collision is ordinarily for the jury to determine. G.S. 20-146, G.S. 20-148.

**2. Automobiles § 37—**

Photographs of the scene of the accident are properly admitted in evidence to explain and illustrate the testimony of the witnesses.

**3. Automobiles § 36:    Negligence § 17—**

Negligence is not presumed from the mere fact of injury.

**4. Negligence § 19b(1)—**

While it is not necessary that negligence be established by direct evidence and may be established by attendant facts and circumstances which reasonably warrant the inference of negligence, such inference must be more than a mere conjecture or surmise and be a legitimate inference from established facts.

**5. Automobiles § 41c—**

The testimony of the witnesses, together with photographs admitted in evidence for the purpose of explaining their testimony, as to a "dug" place in the center of the highway, marks on the shoulder, debris, glass and dirt on the highway, and the position of the cars after the accident, *is held* to leave in conjecture and surmise whether defendants' car was partially to the left of its center of the highway when it struck the car driven by plaintiff's intestate, and therefore nonsuit was properly entered in plaintiff's action for wrongful death based on asserted negligence in this respect.

BOYD *v.* HARPER.

APPEAL by plaintiff from *Sharp, S. J.,* September Civil Term, 1958, of ROCKINGHAM.

This action was instituted for the purpose of recovering damages for the alleged wrongful death of plaintiff's intestate, Charles Edward Boyd. The complaint alleges that Boyd died as a result of injuries received when the automobile he was driving collided with a pickup truck being driven by the defendant Harper and owned by the other named defendants. It alleges that Boyd's death was proximately caused by the negligence of the defendants for that Harper: (a) did not keep a reasonable lookout; (b) operated the pickup in a careless and reckless manner in violation of G.S. 20-140; (c) operated the pickup on the left of the center of the highway in violation of G.S. 20-146; and (d) failed to give Boyd at least one-half of the main traveled portion of the highway in violation of G.S. 20-148.

The defendants answered, denied plaintiff's allegations of negligence, pleaded contributory negligence, and set up counterclaims.

The collision occurred about 9:45 a.m. on 8 July, 1955, approximately 6 miles north of Reidsville in Rockingham County on county road No. 541, which runs generally north and south between Leaksville and Reidsville. This road is paved with asphalt and paved portion is 20 feet wide, and there is a 12-foot shoulder on each side. The collision took place on a sharp curve. The curve is to the right to one traveling northwardly. At the curve the west side of the pavement is elevated, that is, the road at the curve slopes to the east. There are curve warning signs at each approach to the curve. On the curve there is a white broken line in the center of the road and solid yellow lines on each side of the white center line. To the east of the road at the curve there is a bank 5 or 6 feet high, and a motorist going north and entering the curve can see only about 200 feet ahead but cannot see around the curve. A motorist going south can see a little more than 200 feet ahead. The land to the west of the road is about level with the road. About 200 feet south of the place of collision a dirt road from the west intersects with the paved road. Near this intersection and about 150 feet from the place of the collision is a tobacco barn. There is a slight side ditch on the west side of the road. At the south end of the curve the road is straight for approximately one-fourth mile. North of the curve is another curve which turns in the opposite direction. On the morning in question the road was dry and the weather was clear.

At the time of the collision Boyd was driving a 1942 Dodge coupe southwardly toward Reidsville. He lived about a mile north of the curve and just before the accident had stopped at a store for gas. He

was 19 years of age. Harper was driving the pickup northwardly toward Leaksville. He was an employee of the other named defendants and the pickup was theirs. There were no eyewitnesses except Boyd and Harper. From injuries received, Boyd died about 10:30 a.m. on the same day. Harper did not testify.

Joe Harrellson, a state highway patrolman, arrived at the scene at 10:05 a.m. and investigated the accident. He took photographs which were offered and admitted in evidence to illustrate and explain his and other testimony. He testified for the plaintiff as to matters hereinbefore set out, and he also gave the following recital:

"At a point about the middle of the curve there was a 1942 Dodge coupe on the west side of the highway with the left front wheel right at the pavement and the right front wheel approximately 18 inches on the pavement with the back end of the car off on the shoulder and the car was resting headed almost east; 60 feet north of the Dodge coupe was a 1953 International pickup truck lying on its right side; part of the truck was on the highway and the back wheels were off on the east shoulder. . . . The Dodge coupe was damaged on the left front side all the way down the side; the left-hand headlight was knocked out; and the lick was such that it had bowed a portion of the top, the left front door and the left quarter panel. The International truck was damaged on the left front and headlight, left front wheel, and a portion of the left side. . . . There was debris, glass, and dirt in front of the Boyd car. Between the two yellow lines and right in the center was a dug place in the highway. It was 10 feet from this mark to the Boyd car and 50 feet from this mark to the Harper truck. . . . The debris in front of the Boyd automobile was halfway between the edge of the pavement and the center line in the neighborhood of 5 feet in the south traffic lane. Directly under the Boyd car there was a mark that came from the right rear wheel out to the edge of the pavement approximately 12 inches wide. (There was no continuation of this mark onto the paved surface.) A portion of the shoulder, the right side going south, through the grass the gouge mark goes from the right rear wheel of the 1942 Dodge coupe back to the pavement. . . . The Boyd automobile was damaged in its left front fender, left door, and front of the rear left fender and quarter panel and the top. . . . The debris in front of the Boyd car appeared to be portions of mud, oil, glass—such as would apparently accumulate under a vehicle. . . . (I)n the direction of the truck are portions of mud and scurf down near the truck and mud and such parts as would fall from under one; probably oil as is under the other one. . . . (T)he road is so elevated that the liquids that come from apparently the Boyd car ran

across the road. . . . I don't recall any debris in the east lane immediately in front of the Boyd automobile. . . . (A)fter re-examining that picture it's possible there is, in fact, some debris across the center of the highway in front of the Boyd car, across the highway on the side that the Harper automobile was on, could have been very little, I don't know. . . . Plaintiff's exhibit No. 5 shows a considerable amount of debris under the Harper truck and in front of the truck was a portion of the windshield. I do not recall any debris in front of the truck. The windshield was broken but it was more or less a pretty big piece on Mr. Harper's side of the highway. The debris by the Harper truck is on the right side, right hand lane of the highway. It would be on Harper's side. . . . There was a fresh mark on the white broken line between the two yellow lines. There is a slight streak from the mark running from the white on to the edge of the yellow which would be on Harper's side. . . . As to the mark I found in the center of the road a portion of that marking was found on the east side of the centerline; with reference to the center white line near the yellow line. . . ."

A witness, who was working about 500 yards away and heard the crash, came to the scene. He observed the conditions there and his testimony corroborates the patrolman. He testified that he had seen the road that morning before the collision and at that time the road was clear of debris, mud, oil, water and marks.

There was testimony relating to damages.

At the close of the plaintiff's evidence, defendants took voluntary nonsuits as to their counterclaims and moved for judgment as of involuntary nonsuit. The motion was allowed.

From judgment in accordance with the ruling plaintiff appealed and assigned error.

*W. T. Combs, Jr., B. W. Walker, and Ratcliff, Vaughn, Hudson, Ferrell & Carter for plaintiff, appellant.*

*Brown, Scurry, McMichael & Griffin, Bethea & Robinson and Sapp & Sapp for defendants, appellees.*

MOORE, J. The allegations of the complaint with respect to reckless driving and failure to keep a reasonable lookout are not supported by the evidence, or by any reasonable inference that may be drawn therefrom, and further discussion thereof is unwarranted.

The decisive inquiry is whether, at the time of the collision in question, the defendant Harper was driving the pickup on the west (his left) side of the center line of the road in violation of G.S. 20-146 or G.S. 20-148, as alleged by the plaintiff. If so, such conduct was negli-

gence *per se. Hoke v. Greyhound Corp.*, 226 N.C. 692, 698, 40 S.E. 2d 345. Ordinarily, proximate cause is for the jury. *Lyerly v. Griffin,* 237 N.C. 686, 689, 75 S.E. 2d 730.

Upon arrival at the place of the accident the highway patrolman made photographs of the scene, and these were properly admitted in evidence to explain and illustrate his and other testimony. North Carolina Evidence (Stansbury), Sec. 34, p. 53; *S. v. Bass,* 249 N.C. 209, 211, 105 S.E. 2d 645. Patrolman Harrellson made extensive use of the photographs in the course of his testimony and the facts and circumstances disclosed by the photographs are in substantial accord with his recital. Counsel for plaintiff and defendants referred to them repeatedly in their arguments in this Court. We have carefully examined the photographs in the light of the testimony in the case.

Appellant contends that the inference may reasonably be drawn from the facts and circumstances in the case that his intestate came to his death because of the negligence of the defendant Harper in driving the pickup to his left of the center line of the road. He contends that the Dodge automobile driven by deceased came to rest on the west shoulder of the road, facing east, with its right front wheel about 18 inches onto the pavement; that the right rear wheel left a skid mark extending from the pavement to the point it came to rest, but that there was no skid mark on the pavement itself; that the left front door, left quarter panel and top were "bowed" in, showing that the main force of the impact on the Dodge was into its left side; and that mud, dirt, glass, and other debris were in front of the Dodge, about the center of the west lane and none in the east lane at this place. Appellant contends, therefore, that defendants' pickup came across the center line of the road, struck the side of the Dodge, turned it through an angle of about 90 degrees and left all of the debris from the impact in the west lane. Appellant emphasizes the fact that the side skidding of the right rear wheel left no mark on the pavement.

On their part, appellees point out that the pickup came to rest on the east side of the road, at about a 45 degree angle with the road, headed northwest, lying on its right side, and about two-thirds off the paved portion of the road (as shown by the testimony and explained by the photographs); that mud, dirt, glass, and other debris lay beside it in the east lane, none in the west lane; that a part of the windshield of the pickup was in front of it in the east lane. Appellees contend that the collision occurred at this point.

There were no tire marks on the road at any place. In leaving the road and coming to rest none of the tires on the Dodge left any marks

on the pavement. This is also true of the pickup. The two vehicles were 60 feet apart after the collision. At the center line and between the yellow lines, 10 feet north of the Dodge and 50 feet south of the pickup, there was a large "dug" place. With reference to this the patrolman said: "There is a slight streak from the mark running from the white on to the edge of the yellow which would be on Harper's side." If one of the vehicles made the "dug" place and the streak leading therefrom, we can only conjecture as to whether it was moving toward the east or toward the west. None of the debris near the Dodge was identified as coming from the pickup. There is no evidence to show that the pickup was ever at or beyond the center of the road. As to where the impact took place or what happened with respect to the movement of the vehicles immediately after they collided, we can only surmise.

Taken in the light most favorable to the plaintiff, the evidence does not show, and does not permit a reasonable inference, that the defendant Harper was at the time of the collision operating the pickup to the west of the center line.

"Negligence is not presumed from the mere fact that plaintiff's intestate was killed in the collision." *Williamson v. Randall,* 248 N.C. 20, 25, 102 S.E. 2d 381; *Robbins v. Crawford,* 246 N.C. 622, 628, 99 S.E. 2d 852. However, direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances. *Etheridge v. Etheridge,* 222 N.C. 616, 618, 24 S.E. 2d 477. But in a case such as this, the plaintiff must establish attendant facts and circumstances which reasonably warrant the inference that the death of his intestate was proximately caused by the actionable negligence of the defendants. *Robbins v. Crawford, supra; Whitson v. Frances,* 240 N.C. 733, 737, 83 S.E. 2d 879; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670. In *Parker v. Wilson,* 247 N.C. 47, 53, 100 S.E. 2d 258; *Parker, J.,* speaking for the Court, said: "Such inference cannot rest on conjecture or surmise. *Sowers v. Marley, supra.* 'The inferences contemplated by this rule are logical inferences reasonably sustained by the evidence, when considered in the light most favorable to the plaintiff.' *Whitson v. Frances, supra.* 'A cause of action must be something more than a guess.' *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411. A resort to a choice of possibilities is guesswork not decision. *Hanrahan v. Walgreen Co.,* 243 N.C. 268, 90 S.E. 2d 392. To carry his case to the jury the plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate

inference from established facts." See also *Stegall v. Sledge,* 247 N.C. 718, 722, 102 S.E. 2d 115.

The judgment of involuntary nonsuit is
Affirmed.