MURPHY LEE KINLAW v. WALTER MAYNARD WILLETTS AND HORACE T. KING, TRADING AND DOING BUSINESS AS NEW HANOVER IRON WORKS.

(Filed 14 June 1963.)

**1. Negligence § 24a—**

Evidence which establishes nothing more than an accident and an injury is insufficient to go to the jury, but plaintiff must introduce competent evidence tending to show defendant's failure to exercise that degree of care which a reasonably prudent person would have exercised under like circumstances and that such failure was the proximate cause or one of the proximate causes of the injury.

**2. Trial § 21—**

On motion to nonsuit, the evidence and the legitimate inferences therefrom must be considered in the light most favorable to plaintiff.

3. Automobiles §§ 24, 411— Evidence held insufficient to show negligence of defendant as proximate cause of injury to plaintiff pedestrian.

The evidence tended to show that plaintiff was engaged with other workmen in erecting a highway sign at the beginning of a median between the highway and an access road connecting another highway at an overpass, that defendant drove his truck, which had tool boxes flush with the fenders, past the locus and that as the truck passed, plaintiff sustained a wound about the size of a fifty-cent coin between the elbow and wrist, penetrating to the bones and breaking them. *Held:* In the absence of evidence that any object protruded beyond the fenders of the truck, or of any actual contact between plaintiff and any part of the truck, or what actually inflicted the wound, nonsuit was proper.

4. Negligence § 24a; Trial § 25—

The inference of negligence may be drawn from facts in evidence but such inference may not be based on other inferences.

PARKER, J., dissenting.

APPEAL by plaintiff from *Bickett, J.,* October, 1962 Term, ROBESON Superior Court.

The plaintiff instituted this civil action to recover damages for personal injury alleged to have been proximately caused by the defendants' negligence. At the time of the injury the plaintiff and another prisoner, Charles Tew, were serving road sentences for violations of the criminal law. They were at work under the direction of two State Highway employees, H. W. Clemmons and J. W. Carter. These four men were engaged in replacing a traffic sign on a short cutoff or access road connecting north-south State Highway No. 132 and east-west U. S. Highway No. 17 near Wilmington. The access was made necessary by reason of the fact that No. 132 crosses No. 17 on an overpass.

The access road was divided by a plaza or median about five feet wide and elevated about six inches above the asphalt surface. This median or plaza began on the east margin of 132 south of the overhead bridge and extended some distance along its center towards the joinder with No. 17. The sign which the four men were replacing was in the western end of the median near the eastern edge of 132. Clemmons was holding the wooden post supporting the sign in place. The plaintiff, the employee Carter, and the other prisoner, Tew, were using shovels and were replacing dirt, broken pieces of concrete, and asphalt around the post. The four workers were within a few feet of each other.

According to the evidence, the defendant Willetts, driving north in the Ford pickup truck of his employer, New Hanover Iron Works, approached the point where the men were at work about 10:30 on the morning of May 9, 1961. The weather was clear and the road was dry, straight, and level to the south for several hundred yards. As Willetts approached the men at work, he slowed down and at the time he passed the men he was driving about 15 miles per hour. So much of the evidence is not in conflict.

Quoted here is the pertinent part of the plaintiff's testimony. On direct examination: "I was standing at the northernmost part of the plaza between the plaza and the yellow line with a shovel in my hand, shoveling the concrete stuff to go around the post. I was facing South, my face about half and half toward the plaza and toward the highway. My back was toward the highway, I didn't see any motor vehicle approaching from any direction, I did hear one, but I didn't pay any attention to it. Highway No. 132 is a two-lane highway, cars traveling both North and South on that highway. As I heard the motor vehicle approaching, I was shoveling and did not move in any direction in order not to back out of the yellow line surrounding the plaza. When it hit me I was shoveling and I grabbed my arm and turned around and the man driving the truck backed up saying he would carry me to the hospital. After my arm was hit I first saw the truck about 75 yards away, there was no other motor vehicle on the highway at that time. It was a pickup truck, but I do not know what make or model. There was a box built on each side of the truck where they carry tools.

"Question. Do you or do you not know what hit you?

"Answer: No, Sir, I do not.

"There was a hole knocked in my right forearm midway between my elbow and my wrist as big around as a half dollar, I could see pieces of spattered bone."

On cross-examination: "All of us were around that post within three feet of each other. Four or five automobiles or other motor vehicles while we were there working had passed. I heard one just before I was hit. I didn't see anything but I knowed it hit me. I didn't see any motor vehicle when it hit me but when it did I turned around. When I was hit I was shoveling up pieces of concrete bending over. I had to shovel down the side of the plaza to get up the gravel to put it in the hole. My arm wouldn't have been extended out enough to get hit there where I was standing. I don't know how much of the truck or what part of the truck had passed me. I did not see it when it hit me. I did not look at any traffic. . . . My shovel did not go under the wheel and the wheel

did not throw my arm against the truck. When it hit my arm my shovel fell right down side of my arm. At the time of the impact I was facing toward the plaza so I could put the stuff in the hole around the post. I was standing something around two feet from the raised plaza. . . . My right arm hit it, the right side of the truck. I made a statement in the presence of the Superintendent, in the presence of the superintendent of the prison camp. I said I did not know what part of the truck made contact with my arm. I said I felt a sharp pain, dropped the shovel and grabbed my arm. I didn't know what hit me."

Mr. Clemmons, Highway employee, testified: "At the time Murphy Lee Kinlaw was picking up the stuff that had been knocked out when the post was knocked down and putting around the post where I had it. He was on the 132 side of the post and he was shoveling rock and debris right down side of the island. I was holding the post and was standing on top of the island. I was facing in a Northwesterly direction, facing the end of the island. Murphy Lee Kinlaw was putting dirt around the post and I was packing it down around there. When the truck came along he came across holding his arm out across in front of me and said the truck hit my arm. I didn't see it when it hit nor didn't hear it. I saw a truck from where I was standing on the island, going on up the road North on 132. The truck stopped and backed up."

Mr. Carter, of the Highway Department, testified: "I had a shovel in my hand, Murphy Lee Kinlaw had a shovel in his hand and the other prisoner had a shovel in his hand. I think Mr. Clemmons, the foreman, had some equipment with him. I didn't hear Murphy Lee Kinlaw say anything about being hit, but I did see him holding his arm after it happened, when whatever it was, a truck, or something, struck him. At the time I was facing in the direction from which the truck was approaching and didn't notice the truck as it approached."

The defendant testified: "As I approached this elevation, which is approximately 300, 400, or 500 yards from the bridge, I saw three or four men standing on the traffic circle. I was traveling at approximately forty miles an hour. I immediately slowed down and as I approached the people in the island I pulled over to the center line which was white with two yellow lines. My left wheel was over next to the line. I passed these people standing on the traffic island, whether there were more or less than three of them I don't know, for I didn't count them. I couldn't tell what they were doing because it wasn't pertaining to me, wasn't out on the highway and there was no reason for me to observe them standing on the plaza.

"As I passed these people I heard a thud, sounded like a car ran over a rock or stick or something in the road. Sounded like the wheel

of the car hit something. At that time I was going approximately 15 miles an hour. Upon hearing this slight thud, I looked back in the mirror and saw this fellow holding his arm running across the road. Some gentlemen ran across the road backward and forward; that is, the ramp road. The other people, other men were still performing their duties not paying any attention to the man running around."

For the defendant, J. C. Taylor, Highway Patrolman, testified: "I checked the truck, Mr. Willett's truck, to see if I could find any place on the truck to give indication where his arm struck the truck, and I found none, nor did I find any marks on the truck where the shovel came in contact with the side of the truck."

Medical evidence of the injury by stipulation was entered in the record. The plaintiff's only injury consisted of a circular depression wound about the size of a fifty-cent coin, penetrating to, and shattering the bones in the right forearm about half-way between the elbow and the wrist. The wound was sufficiently deep to disclose fragments of the broken bones. The evidence of Carter and the defendant disclosed that immediately after Willetts passed the entrance of the access road the plaintiff was standing in the east traffic lane of 132 holding his injured forearm.

At the close of all the evidence the court entered judgment of involuntary nonsuit, from which the plaintiff appealed.

*Barrington & Britt by J. H. Barrington, Jr., for plaintiff appellant. Ellis E. Page for defendants, appellees.*

Higgins, J.   In order to escape nonsuit in a negligence case, a plaintiff must offer evidence either direct, circumstantial, or a combination of both, tending to show that the defendant failed to exercise that degree of care for the plaintiff's safety which a reasonably prudent man under like circumstances would exercise when charged with a like duty; and that the defendant's failure was the cause, or, under certain circumstances, one of the causes of the injury. The defendant's failure may consist of a negligent act or acts; or of a negligent failure to act if under legal duty to do so. *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Williamson v. Clay,* 243 N.C. 337, 90 S.E. 2d 727; *Boyd v. Harper,* 250 N.C. 334, 108 S.E. 2d 598; *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411. The evidence, and the legitimate inferences from it, must be considered in the light most favorable to the plaintiff. *Wilson v. Camp,* 249 N.C. 754, 107 S.E. 2d 743. Evidence, however, which establishes nothing more than an accident and an injury is insufficient

to go to the jury. *Robbins v. Crawford,* 246 N.C. 622, 99 S.E. 2d 852; *Pack v. Auman,* 220 N.C. 704, 18 S.E. 2d 247.

The evidence of the parties in this case is not in serious conflict. The plaintiff testified he was working with three others, erecting a road sign at or near a point where an access road entered from the east into State Highway No. 132. The defendant, driving a Ford pickup truck north on the State highway, passed the point where the men were at work. As the truck passed, the plaintiff sustained an injury to his right forearm which consisted of a penetrating wound about the size of a fifty-cent coin, breaking both bones of the forearm. The plaintiff said the truck hit him. He also said he didn't know what hit him but the injury occurred when the truck passed. The evidence indicated there were tool boxes on the pickup truck. The investigating officer examined the truck at the scene. He testified there was nothing on the truck indicating recent contact with any object. Neither was there any protrusion beyond the truck's fenders and the body which was in line with the fenders. The plaintiff testified he did not actually see the truck until after it passed. Neither Clemmons nor Carter saw or heard any contact between the truck and any object, although the three men and another prisoner, Tew, were within two or three feet of each other. Immediately after the truck passed, the plaintiff was in the road holding his arm and exhibiting the fresh puncture wound. The defendant testified as he passed the men he was driving at or near as possible to the marked middle line of 132; that he felt one of his wheels run over some object — he thought a rock — and looking back in his rear-view mirror, he saw the plaintiff standing in the road holding his arm. The plaintiff testified: "I don't know how much of the truck or what part of the truck had passed me. I did not see it when it hit me. . . . My shovel did not go under the wheel."

From the plaintiff's testimony it is obvious the statements the truck hit him are his conclusions based on the fact the injury occurred as the truck passed. The evidence permits the inference that something connected with the moving truck inflicted the plaintiff's injury. What actually inflicted the round, penetrating wound into the plaintiff's middle forearm without leaving so much as another scratch on his body, is undisclosed. It seems obvious that such a wound inflicted on a man standing or working on the side of a road could only be inflicted by a spear or some small shaft, or by a missile hurled directly against the mid-forearm. Nothing of such a character protruded from the truck.

How did the accident happen? The defendant, driving at 15 miles per hour in his traffic lane, so far as the evidence discloses, felt one

of his wheels run over something like a rock. Broken pieces of concrete and broken asphalt and rocks were scattered on the road by the force which had knocked down the sign. Four men, three with shovels, were placing the material around the post. All were within three feet of each other. Clemmons held the post in place. He doesn't know what happened. Carter was at work with a shovel. He doesn't know what happened. The plaintiff thinks some part of the truck hit him, but obviously doesn't know what part, and frankly so states. But what about Tew? He was there at work with a shovel. He was not in court. The truck did not strike either Carter's or the plaintiff's shovels. However, no one has testified or apparently knows what happened to Tew's shovel. Whether the truck hit Tew's shovel, driving the end of the handle into the plaintiff's arm, or whether one of the truck wheels propelled a small stone, piece of broken concrete or asphalt, inflicting the injury, are material questions in this case. The evidence does not answer them. Not only the object which inflicted the injury, but where it came from and how it was propelled, are left to speculation and guess. Legal inferences may be drawn from facts; but inferences may not be based on other inferences. The chain of causation permits inferences to be drawn from facts, but if they are based on other inferences the chain of proof is broken. *Lane v. Bryan, supra.*

The concluding paragraph in *Boyd v. Harper,* 250 N.C. 334, 108 S.E. 2d 598, disposes of the legal questions involved in this case:

" 'Negligence is not presumed from the mere fact that plaintiff's intestate was killed in the collision.' *Williamson v. Randall,* 248 N.C. 20, 25, 102 S.E. 2d 381; *Robbins v. Crawford,* 246 N.C. 622, 628, 99 S.E. 2d 852. However, direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances. *Etheridge v. Etheridge,* 222 N.C. 616, 618, 24 S.E. 2d 477. But in a case such as this, the plaintiff must establish attendant facts and circumstances which reasonably warrant the inference that the death of his intestate was proximately caused by the actionable negligence of the defendants. *Robbins v. Crawford, supra; Whitson v. Frances,* 240 N.C. 733, 737, 83 S.E. 2d 879; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670. In *Parker v. Wilson,* 247 N.C. 47, 53, 100 S.E. 2d 258; *Parker, J.,* speaking for the Court, said: 'Such inference cannot rest on conjecture or surmise. *Sowers v. Marley, supra.* "The inferences contemplated by this rule are logical inferences reasonably sustained by the evidence, when considered in the light most favorable to the plaintiff." *Whitson v. Frances, supra.* "A cause of action

must be something more than a guess." *Lane v. Bryan*, 246 N.C. 108, 97 S.E. 2d 411. A resort to a choice of possibilities is guesswork not decision. *Hanrahan v. Walgreen Co.*, 243 N.C. 268, 90 S.E. 2d 392. To carry his case to the jury the plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts.' See also *Stegall v. Sledge*, 247 N.C. 718, 722, 102 S.E. 2d 115."

The judgment of involuntary nonsuit entered at the conclusion of all the evidence is
Affirmed.

PARKER, J., dissenting. Walter Maynard Willetts, one of the defendants, testified in part on direct examination as follows: "I was operating a red, 1957 Ford pickup with two boxes on the side mounted for the purpose of carrying tools and parts, sitting up on top of the fender but not protruding over the fender at all. The truck was the same width from front fenders to back fenders. The tool boxes were four feet from the bound mounted on top of the body which came out flush with the fenders.* * *As I passed these people I heard a thud, sounded like a car ran over a rock or stick or something in the road. Sounded like the wheel of the car hit something. At that time I was going approximately 15 miles an hour. Upon hearing this slight thud, I looked back in the mirrow and saw this fellow holding his arm running across the road.* * *Upon observing the gentleman running across the road, I mashed on the gas to go ahead, then looked back through the mirror and decided I'd better stop; so I immediately pulled over to the shoulder, backed up, stopped the truck and walked back. The man that was hurt had sat down at that time on the plaza. I said, 'Fellow, what happened?' He said, 'You hit me with that truck.'" On cross-examination, he testified: "In my tool box I had parts for furnaces, airconditioners, hand wrenches, screwdrivers, pliers, things like that.* * *The tool box is approximately twelve inches wide and extends inside to the bed of the truck, flush with the body. It is flush on the inside of the truck and extends ten or twelve inches on the outside. The fenders of the truck extend beyond the bed of the truck at least ten or twelve inches flush with the tool boxes on the outside."

Considering the summary of the evidence set forth in the majority opinion, and also the testimony of defendant Willetts set forth verbatim above, it is my opinion that the judgment for motion of nonsuit should be overruled and the case submitted to the jury, and I so vote.