CHARLIE H. FOSTER, ADMINISTRATOR FOR THE ESTATE OF DAISY BELL FOSTER v. KAYE ROWE SHEARIN AND ROWE CHEVROLET-BUICK, INC.

No. 759SC410

(Filed 17 December 1975)

Automobiles §§ 62, 83— striking pedestrian crossing street — absence of negligence — contributory negligence

In an action to recover for the death of a pedestrian who was struck by defendant's car while crossing the street, the evidence was insufficient to show negligence on the part of defendant by speeding or failing to keep a proper lookout where there was no direct evidence concerning the speed of defendant's vehicle and the only physical evidence concerning speed was 48 feet of skid marks and a dent in the hood of defendant's car, and where the evidence showed that, although there was no visual obstruction for some 1000 feet looking toward the scene of the accident from the direction in which defendant's car approached, it was dark, no street lights or other artificial lights were in the area, and the accident occurred at a point where pedestrians would not normally be expected, and there was no evidence as to how long deceased was positioned within the range of the headlights of defendant's car; furthermore, the evidence disclosed that deceased was contributorily negligent as a matter of law in failing to yield the right of way while crossing the street in the dark at a point that was neither a marked nor an unmarked crosswalk and where she had an unobstructed view of defendant's oncoming car for over 600 feet.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 4 March 1975 in Superior Court, FRANKLIN County. Heard in the Court of Appeals 4 September 1975.

This is an action to recover damages for wrongful death. The parties stipulated to the following facts:

"That on the 5th day of December 1972, at approximately 5:50 o'clock p.m., there was an accident on N.C. Highway 401 in Louisburg, North Carolina involving an automobile operated by Kaye Rowe Shearin, and the plaintiff's intestate, Daisy Bell Foster; that the car and Mrs. Foster came into contact with each other; that at the time of the accident Daisy Bell Foster was attempting to cross that highway on foot from the east to the west; Daisy Bell Foster died as a result of the injuries sustained in the accident; that at the time of the accident, Kaye Rowe Shearin was operating an automobile which was owned by Rowe Chevrolet-Buick, Inc. and was doing that with the permission and consent of Rowe Chevrolet-Buick, Inc. That the car was going in a southerly direction over and along Highway 401; that the maximum speed limit where the accident occurred is 45 miles an hour. Where the accident occurred, there are no street lights. Daisy Bell Foster attempted to cross N.C. Highway 401 at a point which was not within a crosswalk, either marked or unmarked. It was dark at the time of the accident. Some distance to the north of the location where the accident occurred, there are several business establishments."

The only witnesses who testified concerning the accident were the investigating officer and the daughter of the deceased. The officer testified that when he arrived at the scene on 5 December 1972, he found defendants' new 1973 Chevrolet automobile headed south in the south-bound lane on the right-hand (west) side of the road at a point approximately 600 feet south of the Family Dollar Store which is located on the east side of the highway. In the immediate vicinity of the automobile there was a 45 mile per hour speed limit sign on the west side of the highway. Defendants' car was located within a few feet south of that sign. The officer did not recall if the headlights on the automobile were burning as he arrived. He did not recall what, if any, skid marks he observed at that time, but he later measured 48 feet of skid marks in the right-hand lane of travel, "clearly in the lane travelled by Mrs. Shearin." He did not see

Foster v. Shearin

any skid marks off of the travelled portion of the highway. There was a dent in the middle of the hood of the Chevrolet, which "hit part of the crease in the hood and took in part of the left-hand side." The highway was straight and level, constructed of smooth asphalt, and there were no defects in the road. The weather was clear and the pavement was dry. He observed no artificial lighting in the area. There are shoulders on both sides of the road. On the left-hand (east) side is a deep embankment of several hundred feet and on the right-hand (west) side of the road there was about a 50 foot deep embankment. Standing at the point where he observed the Chevrolet automobile and looking in a northerly direction, the officer could see a little over 1000 feet without visual obstruction. Standing at the same place and looking in a southerly direction, he could see approximately a quarter of a mile without visual obstruction.

The deceased's 52 year old daughter testified that on 5 December 1972 she lived with her mother and father. Late in the evening on that date she and her mother had been to the store located on the east side of the highway. While they were returning home, she and her mother started to cross the road. She was in front and "her mother was supposed to be behind her." She had crossed over and gotten to the 45 mile per hour sign. When she looked back, her mother had already been hit and was lying out in the road.

The officer also testified that the defendant, Mrs. Shearin, told him that "she had pulled out of the Family Dollar Store and headed south, and she saw a lady on the side of the road waving her hands. About that time she saw the lady (Daisy Bell Foster) in her lane, at which time she slammed on brakes and couldn't stop." He testified that "Mrs. Shearin stated to him that she saw the person that was struck by her automobile for the first time after she observed the lady on the side of the road waving her hands at which time she glanced back to the highway and saw for the first time the lady (Daisy Bell Foster) in her lane of travel."

At the close of plaintiff's evidence, defendant moved for a directed verdict under Rule 50 of the Rules of Civil Procedure. The court granted the motion, and from judgment dismissing the action, plaintiff appealed.

*Pearson, Malone, Johnson, DeJarmon, & Spaulding by C. C. Malone, Jr., for plaintiff appellant.*

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson by E. C. Bryson, Jr. for defendants appellees.*

PARKER, Judge.

Plaintiff's sole assignment of error is directed to the granting of defendants' motion for a directed verdict. Viewing the evidence in the light most favorable to the plaintiff, we find it insufficient to take the case to the jury on the issue of defendant's actionable negligence and therefore affirm the judgment.

Negligence is not presumed from the mere fact that plaintiff's intestate was killed in the accident. *Robbins v. Crawford*, 246 N.C. 622, 99 S.E. 2d 852 (1957). To carry his case to the jury against the defendants on the ground of actionable negligence, the plaintiff "must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts." *Williamson v. Randall*, 248 N.C. 20, 25, 102 S.E. 2d 381, 386 (1958). In his amended complaint plaintiff alleged that defendant driver was negligent in that she operated her vehicle at an excessive speed and failed to keep a proper lookout. Plaintiff's evidence, however, was insufficient to show the driver was negligent in these or in any other respect. There was no direct evidence concerning the speed at which defendants' vehicle was being operated, and the only physical evidence, that concerning the 48 feet of skid marks and the dent in the hood, was clearly insufficient to support a finding of excessive speed. The only evidence bearing on the question whether defendant driver maintained a proper lookout was the evidence as to the physical circumstances at the scene of the accident and as to defendant driver's statements to the officer. The physical evidence showed that the highway was straight and level and that there was no visual obstruction for some 1000 feet looking toward the scene of the accident from the direction in which defendants' vehicle was approaching. However, the stipulations and the evidence also establish that it was dark at the time, there were no street lights or other artificial lights in the area, and the accident occurred at a point where pedestrians would not normally be expected to be. More importantly, the stipulations and evidence also establish that plaintiff's intestate was attempting to walk across the highway from east to west directly into the path of

defendants' oncoming car, and there was no evidence to show how long the deceased was so positioned as to be within the range of the vehicle's headlights. It is left completely to conjecture whether the deceased had been, either momentarily or for any appreciable period of time, at some point on the highway where her presence would be revealed by the headlights of the approaching car. Thus, the physical circumstances leave it a matter of speculation as to whether the most careful driver, maintaining a proper lookout, could have seen the deceased in time to avoid the collision. Nor do we think that defendant driver's statement to the officer that she saw "the lady on the side of the road waiving her hands (evidently referring to the daughter of the deceased, since there was no evidence that any other person was in the area) at which time she glanced back to the highway and saw for the first time the lady (referring to plaintiff's intestate) in her lane of travel," was sufficient to warrant a jury finding that the driver was failing to maintain a proper lookout. On the contrary, that a person is waving his arms on the side of the road furnishes adequate cause for a driver to remove his eyes momentarily from the road. "A driver who only looks ahead, oblivious to conditions behind and beside him which should affect his driving, is not keeping a proper lookout." *Russell v. Hammond*, 200 Va. 600, 605, 106 S.E. 2d 626, 631 (1959).

We also find that the evidence in this case, viewed in the light most favorable to the plaintiff, so clearly establishes negligence on the part of plaintiff's intestate as one of the proximate causes of her injuries as to require directed verdict for the defendants on that ground. The intestate was walking across a highway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection. It was her duty to yield the right of way to all vehicles upon the roadway. G.S. 20-174(a). Although the failure of a pedestrian crossing a roadway at a point other than a crosswalk to yield the right of way to a motor vehicle is not contributory negligence *per se* but is only evidence of negligence, "the court will nonsuit a plaintiff-pedestrian on the ground of contributory negligence when all the evidence so clearly establishes his failure to yield the right of way as one of the proximate causes of his injuries that no other reasonable conclusion is possible." *Blake v. Mallard*, 262 N.C. 62, 65, 136 S.E. 2d 214, 216 (1964). Here, the stipulations and evidence establish that plaintiff's intestate walked in the dark across the highway directly into the path

of the approaching vehicle at a point where it was her duty to yield the right of way and where she had an unobstructed view of the vehicle as it approached over a distance of at least 600 feet. "A pedestrian who crosses the street at a point where he does not have the right of way must constantly watch for oncoming traffic before he steps into the street and while he is crossing. (Citations omitted.) If he sees a vehicle approaching him, he must move out of its path. (Citations omitted.) A pedestrian who fails to take these precautions cannot be said to exercise reasonable care for his own safety." *Brooks v. Boucher*, 22 N.C. App. 676, 678, 207 S.E. 2d 282, 284 (1974).

The trial court properly granted defendants' motion for directed verdict, and its judgment is

Affirmed.

Judges BRITT and CLARK concur.